IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WILLIAM MCGHEE,

        Plaintiff,

v.                                    CIV-04-0239 MV/LAM

JOE WILLIAMS, et al.,

        Defendants.

# PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

## PROPOSED FINDINGS

**THIS MATTER** is before the Court on ***Defendants' Motion to Dismiss*** (*Doc. 262*)

(hereinafter, "***Motion to Dismiss***").  Having reviewed the motion, Plaintiff's response to the motion

(*Doc. 264*) (hereinafter, "***Response***"), Defendants' reply in support of the motion (*Doc. 278*)

(hereinafter, "***Reply***"), Defendants' supplemental brief in support of the motion (*Doc. 281*)

(hereinafter, "***Defendants' Supplemental Brief***"), Plaintiff's response to Defendants' supplemental

brief (*Doc. 284*) (hereinafter "***Plaintiff's Response to Supplemental Brief***"), the record in this case

and relevant law, the Court recommends that the Motion be **GRANTED IN PART** and **DENIED**

**IN PART** as set forth below.

---

[1]Within ten (10) days after a party is served with a copy of these Proposed Findings and Recommended Disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1)(C), file written objections to such Proposed Findings and Recommended Disposition.  A party must file any objections with the Clerk of the United States District Court for the District of New Mexico within the ten (10) day period allowed if that party wants to have appellate review of the Proposed Findings and Recommended Disposition.  If no objections are filed, no appellate review will be allowed.  Pursuant to Fed. R. Civ. P. 72(b)(2), a party may respond to another party's objections within ten (10) days after being served with a copy of the objections.

Also before the Court is Plaintiff's **Motion for Leave to Amend Complaint** (*Doc. 289*), filed on May 22, 2009.  The Court has reviewed this motion, the record in this case and relevant law, and recommends that the motion be **DENIED**.

### Order for Supplemental Briefing

On January 30, 2009, the Court ordered Defendants to file a supplemental brief in support of their **Motion to Dismiss** (*Doc. 262*) to address certain deficiencies identified by the Court. Specifically, the Court ordered Defendants to: (1) clarify whether their **Motion to Dismiss** (*Doc. 262*) was filed as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or as a motion for summary judgment under Fed. R. Civ. P. 56; (2) address their arguments to the claims in Plaintiff's **Amended Civil Complaint** (*Doc. 253*), since the amended complaint, filed on April 29, 2008, superseded and displaced in its entirety Plaintiff's original **Civil Complaint** (*Doc. 1*);[2] (3) expand and clarify their brief and conclusory arguments so the Court could ascertain which claims the arguments related to and how the arguments supported the dismissal of Plaintiff's claims or entry of summary judgment in favor of Defendants; and (4) clarify whether the motion was filed on behalf of all, or only some, of the Defendants in this action.  *See* **Order for Supplemental Briefing** (*Doc. 277*).

Most of these deficiencies were remedied by Defendants.  In their supplemental brief, Defendants argue that Plaintiff's **Amended Civil Complaint** (*Doc. 253*) should be dismissed with prejudice, citing only the standard for dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  *See* **Defendants' Supplemental Brief** (*Doc. 281*) at 3-4, 22.  Based on this argument, and the fact that Defendants failed to present matters outside the

---

[2]*See* **Order for Supplemental Briefing** (*Doc. 277*) at 2, n. 2

pleadings in their ***Motion to Dismiss*** (*Doc. 262*) or comply with the requirements for summary judgment motions in local rule D.N.M.LR-Civ. 56(1)(b),[3] the Court infers that Defendants intend that their motion be treated as a motion to dismiss under Rule 12(b)(6).  Although a motion to dismiss under Rule 12(b)(6) must generally be served before a responsive pleading is filed, which is not the case here with the exception of Defendant Mares,[4] the Court will consider the motion, and Defendant' arguments for dismissal of Plaintiff's claims, pursuant to its authority to dismiss claims, *sua sponte*, in proceedings brought *in forma pauperis*, if the plaintiff fails to state a claim on which relief may be granted.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *see also* 42 U.S.C. § 1997e(c)(1) (similar power regarding the dismissal of claims brought by prisoners under federal law with respect to prison conditions).  Additionally, because the first paragraph of Defendants' supplemental brief states that the brief was filed on behalf of all of the Defendants in this case, including Defendant Mares, the Court infers that all of the Defendants in this case have filed, or joined in, the ***Motion to Dismiss*** (*Doc. 262*).  *See* ***Defendants' Supplemental Brief*** (*Doc. 281*) at 1.

In his response to ***Defendants' Supplemental Brief***, filed on March 6, 2009, Plaintiff asserts various arguments but also withdraws some of his claims.  Specifically, Plaintiff has withdrawn "my claims against the defendants concerning a change in the GAF scale that deviates from professional standards[,]" and "all tort claims, but not claims under 33-2-15 NMSA, as they relate to due process

---

[3]D.N.M. LR-Civ. 56.1(b) requires that a motion for summary judgment be filed with a supporting memorandum that contains "a short , concise statement of the reasons in support of the motion with a list of authorities relied upon[,]" and "a concise statement of all of the material facts as to which movant contends no genuine issue exists . . . [which are] numbered and [] refer with  particularity to those portions of the record upon which movant relies."

[4]Defendant Mares was served with process and answered the ***Amended Civil Complaint*** (*Doc. 253*) after the ***Motion to Dismiss*** (*Doc. 262*) was filed.  *See Order* (*Doc. 280*) for service on Defendant Mares, filed on February 11, 2009, and ***Defendant Mares' Answer to Amended Complaint [Doc. 253]*** (*Doc. 288*), filed on April 10, 2009.

claims." *See **Plaintiff's Response to Supplemental Brief*** (*Doc. 284*) at ¶¶ 17, 15, respectively.[5] The Court construes these statements by Plaintiff as withdrawing all of his state tort claims, except his claim in paragraph 37 of the ***Amended Civil Complaint*** (*Doc. 253*) related to N.M. Stat. Ann. § 33-2-15 (1978), and as withdrawing his claim under 42 U.S.C. § 1983 in paragraph 57 of the ***Amended Civil Complaint*** (*Doc. 253*) related to an alleged change in the GAF scale used at the prison where he was incarcerated.

### *Factual and Procedural Background*

Plaintiff, who is an inmate proceeding *pro se* and *in forma pauperis*, is incarcerated at the Central New Mexico Correctional Facility (hereinafter, "CNMCF").  On April 29, 2008, Plaintiff filed an ***Amended Civil Complaint*** (*Doc. 253*) in which he named a number of current and former New Mexico corrections officials as defendants and asserted multiple claims for relief under 42 U.S.C. § 1983 and state law, all of which relate to prison conditions.  Because Plaintiff is a *pro se* litigant, the Court construes his amended complaint liberally and holds it to a less stringent standard than a formal pleading drafted by a lawyer.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  However, the broad reading of Plaintiff's amended complaint "does not relieve him of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d at 1110.  "[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Id.*

---

[5]The Court takes judicial notice of the fact that the "GAF Scale" is a rating system on a scale of zero to one-hundred that is used by clinicians to assess an individual's overall level of functioning.  It is used to rate individuals with respect to their psychological, social and occupational functioning.  The GAF Scale is divided into ten ranges of functioning and each ten-point range in the GAF Scale has two components.  The first component covers symptom severity and the second component covers functioning.  The final GAF Scale rating always reflects whichever of the two is worse.  In most instances, GAF Scale ratings should assess an individual's level of functioning at the time of the evaluation.  *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 32 - 34 (4th ed., Text Revision, 2000).

Taking into account the claims withdrawn by Plaintiff, the Court construes his *Amended Civil Complaint* (*Doc. 253*) as asserting the following claims: (1) Defendants Perry, Williams, Bustos and Prescott wrote, edited, signed and enforced New Mexico Corrections Department (hereinafter, "NMCD") policies against Plaintiff that denied him the right to possess religious and legal books, magazines and newspapers, and restricted his possession of letters, which caused the violation of his rights under the First, Fourth and Fourteenth Amendments to the U.S. Constitution (*id.* at ¶ 36); (2) Defendants Perry, Williams, Bustos, Prescott, Sedillo, LeMaster, Beals and Thompson wrote, edited, signed and enforced NMCD policies against Plaintiff that did not conform to law prescribed for the governance of the penitentiary in accordance with N.M. Stat. Ann. § 33-2-15 (1978) for which they are liable in tort under the New Mexico Tort Claims Act, N.M. Stat. Ann. §§ 41-4-1 through 41-4-27 (2008) (hereinafter, "Tort Claims Act") (*id.* at ¶ 37); (3) Defendants Perry, Prescott and Bustos wrote, edited, signed and enforced NMCD policies against Plaintiff which caused him to be denied recreation for one-hundred and twenty consecutive days and thereby subjected him to cruel and unusual punishment in violation of his rights under the Eighth and Fourteenth Amendments to the U.S. Constitution (*id.* at ¶ 44); (4) Defendants Moore and Warren ignored the fact that Plaintiff had a DSM-IV illness listed in his mental health file and denied him placement in an Alternative Placement Area (hereinafter, "APA") which caused the violation of his rights to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the U.S. Constitution (*id.* at ¶ 58); (5) Defendants Ulibarri, Perry, Prescott and Bustos changed the NMCD behavioral program contract policy in a way that prevented Plaintiff from using the policy which caused the violation of his rights under the Eighth and Fourteenth Amendments to the U.S. Constitution and the revised policy is unconstitutional on its face because it amounts to cruel and unusual punishment (*id.* at ¶¶ 61-65);

(6) Defendant LeMaster wrote and signed NMCD Policy PNM-032401 which subjects maximum security prisoners to visual anal examinations when going from one secure area of the prison to another and Plaintiff was subjected to this policy which violated his rights under the Fourth Amendment to the U.S. Constitution (*id.* at ¶¶ 68-71); (7) Defendants Tafoya, Shanks, Ulibarri, Prescott and Casaus suspended Plaintiff's visits with his wife, without giving him notice of the suspension or a time limit on how long the suspension would last, and thereby violated his rights under the First and Fourteenth Amendments to the U.S. Constitution (*id.* at ¶¶ 88-89); (8) in suspending Plaintiff's visits with his wife for four years and six months, Defendants Tafoya, Shanks, Ulibarri and Casaus subjected Plaintiff to an atypical and significant hardship and thereby violated Plaintiff's rights under the Fourteenth Amendment to the U.S. Constitution (*id.* at ¶ 90); (9) Defendants Mares, Ulibarri, Prescott and Shanks denied Plaintiff money orders from his wife which violated his rights under the Fourteenth Amendment to the U.S. Constitution (*id.* at ¶ 91); and (10) Defendants Perry, Bustos, Ulibarri, Prescott, Shanks and LeMaster wrote, edited, signed and enforced an NMCD policy against Plaintiff that subjected him to sixteen consecutive months of disciplinary segregation which constituted cruel and unusual punishment and caused the violation of his rights under the Eighth and Fourteenth Amendments to the U.S. Constitution (*id.* at ¶¶ 96-97).

Plaintiff alleges that all Defendants are current or former employees of NMCD, and that all Defendants acted within the course and scope of their employment and under color of state law at all times pertinent to his amended complaint. *Id.* at ¶¶ 30-31. Plaintiff sues all the Defendants in their individual capacities and, for purposes of injunctive relief only, also sues Defendant Williams in his official capacity. *Id.* at ¶ 29. Plaintiff seeks declaratory and injunctive relief, compensatory and punitive damages, costs and, although he is not represented by counsel at the present time, attorney's fees. *Id.* at ¶ 11 and pages 27-28.

After Plaintiff's original complaint was filed, the Court ordered a *Martinez* report based on the claims in that complaint.  *See **Order to File a Martinez Report*** (*Doc. 84*).  After protracted submissions on the *Martinez* report, Plaintiff filed his **Amended Civil Complaint** (*Doc. 253*), as a matter of right under Fed. R. Civ. P. 15(a)(1)(A), because Defendants had not filed a responsive pleading.  After all the Defendants but Mares answered the **Amended Civil Complaint** (*Doc. 253*), Defendants filed their **Motion to Dismiss** (*Doc. 262*) in response to the Court's **Order Setting Deadlines for Dispositive Motions** (*Doc. 261*).

### Standards for Review of Plaintiff's Claims

Under 28 U.S.C. § 1915(e)(2)(B)(ii), the Court may dismiss any claim in a complaint filed *in forma pauperis* which fails to state a claim on which relief may be granted.  "Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Perkins v. Kansas Dep't of Corrections*, 165 F.3d 803, 806 (10th Cir. 1999) (citation omitted).  In reviewing Plaintiff's amended complaint for dismissal under Section 1915(e)(2)(B)(ii), the Court "must accept the allegations of the [amended] complaint as true and construe those allegations, and any reasonable inferences that might be drawn from them, in the light most favorable to the plaintiff." *Gaines v. Stenseng*, 292 F.3d 1222, 1224 (10th Cir. 2002) (citing *Perkins*, 165 F.3d at 806).

After liberally construing Plaintiff's **Amended Civil Complaint** (*Doc. 253*), the Court concludes that several of Plaintiff's claims brought pursuant to 42 U.S.C. § 1983 should be dismissed with prejudice for failure to state a claim on which relief may be granted.  Additionally, the Court concludes that Plaintiffs sole remaining state law claim should be dismissed with prejudice based on sovereign immunity.

*Analysis of Defendants' Motion*

*1. Eleventh Amendment Immunity*

Defendants appear to argue that all of Plaintiff's claims in his amended complaint are barred by immunity grounded in the Eleventh Amendment of the U.S. Constitution.  *See Defendants' Supplemental Brief* (*Doc. 281*) at 4-5.  The Eleventh Amendment bars suits against states and state agencies for money damages in federal court.  *See Edelman v. Jordan*, 415 U.S. 651, 664-66 (1974), *overruled on other grounds by Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 63, n. 4 (1989).   State officials sued in their official capacities fall within the ambit of Eleventh Amendment immunity.   *Meade v. Grubbs*, 841 F.2d 1512, 1525 (10th Cir. 1988). However, under the doctrine of *Ex Parte Young*, 209 U.S. 123, 159-60 (1908), Eleventh Amendment immunity generally does not extend to a state official sued in his official capacity if the plaintiff seeks only prospective, injunctive relief against the state official.   *Hill v. Kemp*, 478 F.3d 1236, 1255-56 (10th Cir. 2007).   The Eleventh Amendment does not bar claims brought against state officials in their individual capacities.  *See Whitney v. State of New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997) ("This court has recognized that '§ 1983 suit[s] against state officers in their individual capacities [are] not barred by the Eleventh Amendment, inasmuch as such suits proceed on the theory that when the officers act unconstitutionally, they are stripped of their official or representative character and are thus subjected to the consequences of their conduct.'") (alteration in original) (quoting *Houston v. Reich*, 932 F.2d 883, 887 (10th Cir. 1991)); *see also Duncan v. Gunter*, 15 F.3d 989, 991-92 (10th Cir. 1994) ("The Eleventh Amendment does not bar [individual-capacity suits] because state officers may be personally liable for their unconstitutional acts.").

In this case Defendants, who are all allegedly current or former state officials or employees, are sued in their individual capacities, with the exception of Defendant Williams. *See Amended Civil Complaint* (*Doc. 253*) at ¶ 29.  Plaintiff also sues Defendant Williams in his official capacity, but only "[f]or purposes of injunctive relief." *Id.*  Under the cases cited above, Plaintiff's individual capacity claims against Defendants are not barred by the Eleventh Amendment.  Although Plaintiff does not specify the injunctive relief that he seeks, to the extent that he seeks only prospective, injunctive relief against Defendant Williams to enforce his rights, Plaintiff's equitable claim is not barred by the Eleventh Amendment.  Thus, the Court concludes that Plaintiff's claims against Defendants in his amended complaint are not barred by Eleventh Amendment immunity.

### 2.  Plaintiff's Claim Regarding the Possession of Religious and Legal Books, Magazines and Newspapers, and Letters

Plaintiff alleges that Defendants Perry, Williams, Bustos and Prescott wrote, edited, signed and enforced NMCD policies against Plaintiff that denied him the right to possess religious and legal books, magazines and newspapers, and restricted his possession of letters, which violated his rights under the First, Fourth and Fourteenth Amendments to the U.S. Constitution. *See Amended Civil Complaint* (*Doc. 253*) at ¶ 36.  Plaintiff does not identify the specific policies at issue in his amended complaint, but he alleges that the policies were adopted in connection with a new prison level system implemented by NMCD. *Id.* at ¶ 2.[6]  Plaintiff alleges that he was denied possession of legal, religious and self-help books from his property, pursuant to prison policies, on or about August 11, 2000, when he entered the "Level V/Level VI" system, and again on or about

---

[6]Although Plaintiff does not identify the specific policies at issue, references in paragraphs 32, 33 and 35 of the amended complaint to certain exhibits to Plaintiff's original complaint indicate that the following policies and/or tables may be at issue in his claim regarding reading materials and letters: (1) Level VI Table (personal books, religious books, magazines and letters); (2) NMCD Policy 143000 (magazines and newspapers); and (3) NMCD Policy 143002.B (personal books and letters). *See Amended Civil Complaint* (*Doc. 253*) at ¶¶ 32-33, 35; *Civil Complaint* (*Doc. 1*), Exhibits B-2, D-1, D-2, D-4, E-1, E-2, E-4, H-1, H-2, I-2, I-3, I-4.

December 13, 2003. *Id.* at ¶ 32. Plaintiff alleges that he was banned from possessing any magazines and newspapers, pursuant to prison policies, and that on or about November 13, 2003, when he asked to purchase two magazines and one newspaper, his request was denied. *Id.* at ¶ 33. Plaintiff alleges that his possession of letters was restricted to three at one time, pursuant to prison policies; that on or about August 11, 2000, his request for letters from his personal property was denied; and that on or about February 6, 2001, during a prison shake-down, his personal letters were taken because he had more than three. *Id.* at ¶ 34. Plaintiff alleges that on several occasions when he received more than the three-letter limit on mail, he was given three letters and told that if he wanted to receive more he would have to read, and then destroy, the three letters he had. *Id.* at ¶ 35.

Defendants make a number of brief and conclusory arguments in their supplemental brief regarding this claim. First, they appear to argue that any procedural due process claim that Plaintiff is asserting under the Fourteenth Amendment should be dismissed because Plaintiff had no constitutionally protected property interest in possession of the reading materials and letters that Defendants allegedly deprived him of. *See **Defendants' Supplemental Brief** (Doc. 281)* at 6. In connection with this, Defendants argue that Plaintiff has failed to demonstrate an "atypical, significant deprivation" which is required to sustain a property interest due process claim. *Id.* Second, Defendants argue that any equal protection claim that Plaintiff is asserting under the Fourteenth Amendment should be dismissed because Plaintiff has failed to allege that he was treated differently than any other, similarly situated persons which is required to sustain a claim for the violation of his Fourteenth Amendment right to equal protection. *Id.* at 7-8.

Having reviewed Plaintiff's amended complaint, it is not clear to the Court that Plaintiff is asserting independent Fourteenth Amendment procedural due process and equal protection claims regarding the deprivation of reading materials and letters, separate and apart from his claims under

the First and Fourth Amendments (as applied to the states through the Fourteenth Amendment).[7]

Although Plaintiff cites the Fourteenth Amendment in his claim regarding the deprivation of reading materials and letters, he does not mention procedural due process or equal protection and his amended complaint and his allegations are not suggestive of these sorts of claims.  Moreover, in his response to ***Defendants' Motion to Dismiss*** (*Doc. 262*), Plaintiff concedes that he has not asserted any equal protection claims in his amended complaint.  *See **Response*** (*Doc. 264*) at ¶ 19. Nevertheless, for the sake of analytical clarity, the Court will address Defendants' arguments regarding procedural due process and equal protection in regard to the deprivation of reading materials and letters.

### A.  Fourteenth Amendment - Procedural Due Process

To establish a claim under § 1983, a plaintiff must establish that he was deprived of a right secured by the U.S. Constitution or the laws of the United States and that the alleged deprivation of the right was committed under color of state law.  *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).  "A due process claim under the Fourteenth Amendment can only be maintained where there exists a constitutionally cognizable liberty or property interest with which the state has interfered."  *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006) (citation omitted). Here, Plaintiff alleges that he was deprived of property, *i.e.*, his reading materials and letters. Plaintiff has not alleged the deprivation of a constitutionally protected liberty interest under state law.  The Tenth Circuit Court of Appeals has ruled that property interest due process claims of prisoners are to be determined under the "atypical and significant hardship" analysis announced in *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  *See Cosco v. Uphoff*, 195 F.3d 1221, 1224

---

[7]The First and Fourth Amendments are made applicable to the states by the Fourteenth Amendment.  *See Gitlow v. People of the State of New York*, 268 U.S. 652, 666 (1925) (First Amendment); *Soldal v. Cook County, Illinois*, 506 U.S. 56, 61 (1992) (Fourth Amendment).

(10th Cir. 1999) (*per curiam*).  In *Cosco*, the Tenth Circuit held, in regard to regulations governing what prisoners could keep in their cells, that the Supreme Court's "mandate since *Sandin* is that henceforth we are to review property and liberty interest claims arising from prison conditions by asking whether the prison condition complained of presents 'the type of atypical, significant deprivation in which a State might conceivably create a liberty [or property] interest.'" *Id.* (alteration in original, quoting *Sandin*, 515 U.S. at 486).

Applying this standard, the Court finds that Plaintiff's allegations regarding the deprivation of reading materials and letters fail to state a valid procedural due process claim under the Fourteenth Amendment and § 1983.  Plaintiff has not alleged any atypical and significant hardship in relation to the ordinary incidents of prison life.  Regulation of the type and quantity of personal property that an inmate may possess in a prison cell reflects a typical type of restraint imposed on the prison population and is not the type of atypical, significant deprivation in which the state might create a property interest.  *See Cosco*, 195 F.3d at 1222-1224 (permanent separation of an inmate from his property did not amount to an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life).  Thus, the Court concludes that Plaintiff's amended complaint fails to state a procedural due process claim under the Fourteenth Amendment for restrictions placed on his possession of reading materials and letters and this claim should be dismissed with prejudice.  Plaintiff has no constitutionally-protected property interest in possessing more reading materials and letters in his cell than are permitted by prison policies.

### B.  Fourteenth Amendment - Equal Protection

Defendants are correct that Plaintiff has not alleged differential treatment in his amended complaint regarding the deprivation of reading materials and letters.  Given the absence of such allegations, and Plaintiff's concession in his **Response** (*Doc. 264*) that he has not asserted any equal

protection claims in his amended complaint, the Court concludes that Plaintiff's amended complaint fails to state an equal protection claim under the Fourteenth Amendment for restrictions placed on his possession of reading materials and letters. *See Derrick v. Ward*, No. 03-6090, 91 Fed. Appx. 57, 2004 WL 38545 at *4 (10th Cir. Jan. 8, 2004) (unpublished) (citing *Marshall v. Columbia Lea Reg'l. Hosp.*, 345 F.3d 1157, 1179 (10th Cir. 2003)) ("To sustain a claim under the Equal Protection Clause, [Plaintiff] must provide evidence that he was treated differently from others who are similarly situated to him, and that the acts forming the basis of the claim were motivated by a discriminatory purpose."). Thus, the Court concludes that this claim, if Plaintiff is indeed asserting one, should be dismissed with prejudice.

### C. Fourth Amendment

As noted above, Plaintiff alleges in his amended complaint that Defendants Perry, Williams, Bustos and Prescott wrote, edited, signed and enforced NMCD policies against him which denied him the right to possess reading materials and letters, and thereby violated his rights under the Fourth Amendment. *See **Amended Civil Complaint** (Doc. 253)* at ¶ 36. Plaintiff offers few specifics regarding this generalized Fourth Amendment claim. Liberally construing his amended complaint, this claim appears to be based on the allegation in his amended complaint that his personal letters were taken during a prison shakedown because he had more than three letters in his possession at one time. *Id.* at ¶ 34.

The Court concludes that this Fourth Amendment claim should be dismissed *sua sponte*, under 28 U.S.C. § 1915(e)(2)(B)(ii) because it fails to state a claim on which relief may be granted. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. The Supreme Court has held "that prisoners have no legitimate expectation of privacy and that the

Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984).  Additionally, in the same case the Supreme Court held that the Fourth Amendment does not protect against seizures of an inmate's property.  *Id.* at 528, n. 8 ("[T]he same reasons that lead us to conclude that the Fourth Amendment's proscription against unreasonable searches is inapplicable in a prison cell, apply with controlling force to seizures.  Prison officials must be free to seize from cells any articles which, in their view, disserve legitimate institutional interests.").  Therefore, the Court concludes that this claim is not cognizable under the Fourth Amendment and it should be dismissed with prejudice.

### D.  First Amendment

Based on the allegations in his ***Amended Civil Complaint*** (*Doc. 253*), the Court concludes that Plaintiff has stated a claim under the First Amendment's free speech provision,[8] as applied to the states through the Fourteenth Amendment, challenging the constitutionality of NMCD's policies restricting Plaintiff's access to books, magazines, newspapers and letters.  Imprisonment does not deprive Plaintiff of the constitutional protections of the First Amendment.  *See Beard v. Banks*, 548 U.S. 521, 528 (2006) (citing *Turner v. Safley*, 482 U.S. 78, 93 (1987)).  However, the policies in question will be subject to analysis under the test articulated in *Turner* for determining their reasonableness.  *See Wardell v. Duncan*, 470 F.3d 954, 959-960 (2006) (*Turner* "established 'that restrictive prison regulations [including restrictions on First Amendment rights] are permissible if they are reasonably related to legitimate penological interests and are not an exaggerated response those concerns.'" (quoting *Beard v. Banks*, 548 U.S. at 528) (alteration in original).

---

[8]The First Amendment states, in relevant part, that "Congress shall make no law . . . abridging the freedom of speech[.]  U.S. Const. amend I.

Turner established a four-factor test for assessing the reasonableness of challenged prison regulations. *See Turner v. Safley*, 482 U.S. at 89-90.

### 3. Plaintiff's Claim Based on N.M. Stat. Ann. § 33-2-15 (1978)

Plaintiff alleges that Defendants Perry, Williams, Bustos, Prescott, Sedillo, LeMaster, Beals and Thompson wrote, edited, signed and enforced NMCD policies against Plaintiff that did not conform to law prescribed for the governance of the penitentiary in accordance with N.M. Stat. Ann. § 33-2-15 (1978)[9] for which they are liable in tort under the Tort Claims Act. *See Amended Civil Complaint* (*Doc. 253*) at ¶ 37. Plaintiff alleges that these defendants knew, or should have known, that they owed Plaintiff a duty of reasonable care and they breached that duty resulting in the violation of Plaintiff's rights and proximately causing him damages. *Id.* In their supplemental brief, Defendants argue that this claim is barred by qualified immunity and sovereign immunity. *See Defendants' Supplemental Brief* (*Doc. 281*) at 9-10. Additionally, Defendants argue that this claim should be dismissed because Plaintiff failed to give proper notice of this claim as required by the Tort Claims Act. *Id.* at 9.

As an initial matter, the Court notes that Defendants' assertion of qualified immunity as a defense to this claim has no merit. This is a claim under state law, not federal law, to which qualified immunity does not apply. *See Eidson v. Owens*, 515 F.3d 1139, 1145 (10th Cir. 2008) (citing *Jenkins v. City of New York*, 478 F.3d 76, 86 (2d Cir. 2007) ("'Qualified immunity' protects

---

[9]N.M. Stat. Ann § 33-2-15 (1978) states:

> The employees of the penitentiary shall perform such duties in the charge and oversight of the penitentiary, care of the property belonging thereto, and in the custody, government, employment and discipline of the convicts as shall be required of them by the corrections division [corrections department] or the warden, in conformity with law and rules and regulations prescribed for the government of the penitentiary. (alterations in original).

an official from liability under *federal* causes of action but is not generally understood to protect officials from claims based on state law.") (emphasis added)).

Defendants also argue that this claim is barred by sovereign immunity. *See Defendants' Supplemental Brief* (*Doc. 281*) at 9. In a brief and conclusory argument, Defendants contend that they are public employees of the State of New Mexico who enjoy sovereign immunity from suit and there is no applicable waiver of immunity for this claim under the Tort Claims Act. *Id.*

New Mexico abolished sovereign immunity for tort actions in *Hicks v. State*, 88 N.M. 588, 590-91, 544 P. 2d 1153, 1155-56 (1976). In response to *Hicks*, the New Mexico State Legislature enacted the Tort Claims Act which reinstated governmental immunity except in specific classes of actions. Section 41-4-4(A) of the Act provides that public employees, while acting within the scope of their duties, are immune from liability for any tort except as waived by the Act. N.M. Stat. Ann. § 41-4-4(A) (2001). Thus, under New Mexico law, a plaintiff's cause of action for tort must fit within one of the exceptions to the immunity granted to public employees in the Tort Claims Act to be actionable.

In his amended complaint, Plaintiff alleges that all of the Defendants in this case are, or were, employees of NMCD. *See Amended Civil Complaint* (*Doc. 253*) at ¶ 31. Plaintiff further alleges that all Defendants acted within the "course and scope of their employment" at all times pertinent to his amended complaint. *Id.* at ¶ 30. In regard to the individual Defendants named in Plaintiff's claim based on N.M. Stat. Ann. § 33-2-15 (1978), Plaintiff alleges that Defendant Perry is a former Secretary of Corrections, Defendant Williams is the current Secretary of Corrections, Defendant Bustos is the former Director of Adult Prisons, Defendant Prescott is an attorney for NMCD, Defendant Sedillo is the former Deputy Secretary of Operations and Grievance Appeals

16

Officer for NMCD, Defendant LeMaster is the former Warden of the Penitentiary of New Mexico (hereinafter, "PNM") and current Director of Adult Prisons, Defendant Beals is a former Unit Manager and Grievance Officer for PNM, and Defendant Thompson is a former Unit Manager and Grievance Officer and current administrator of NMCD.  *See **Amended Civil Complaint*** (*Doc. 253*) at ¶¶ 15-20, 25-26.  Thus, Plaintiff alleges that these individual Defendants were, at all relevant times to his claim, public employees of NMCD acting within the scope of their duties.

As discussed above, New Mexico public employees acting within the scope of their duties are immune from liability in tort except as waived by the Tort Claims Act.  *See* N.M. Stat. Ann. § 41-4-4(A) (2001).  In his amended complaint, Plaintiff fails to allege that New Mexico has waived sovereign immunity for his claim based on N.M. Stat. Ann. § 33-2-15 (1978).  *See **Amended Civil Complaint*** (*Doc. 253*).  Nor does he cite any provision of the Tort Claims Act waiving Defendants' immunity in regard to this claim.  *Id.*[10]  Assuming, without deciding, that a state tort claim is actionable under N.M. Stat. Ann. § 33-2-15 (1978),[11] the Court concludes, based on the allegations in Plaintiff's amended complaint, that his claim against Defendants Perry, Williams, Bustos, Prescott, Sedillo, LeMaster, Beals and Thompson based on N.M. Stat. Ann. § 33-2-15 (1978) is barred by sovereign immunity, as reinstated by the Tort Claims Act, and should

---

[10]The Court notes that Section 41-4-12 of the Tort Claims Act waives sovereign immunity where law enforcement officers, acting within the scope of their duties, cause the "deprivation of any rights, privileges or immunities secured by the . . . laws of . . . New Mexico[.]". N.M. Stat. Ann. § 41-4-12 (1978). However, the allegations in Plaintiff's amended complaint indicate that the Defendants named in his claim based on N.M. Stat. Ann. § 33-2-15 (1978) are, or were, administrative employees of NMCD.  Prison administrators have been held not to be law enforcement officers within the meaning of this waiver of immunity in the Tort Claims Act.  *See Anchondo v. Corrections Department of the State of New Mexico*, 100 N.M. 108, 111, 666 P.2d 1255, 1258 (1983) (holding that Secretary of Corrections and Warden of the state penitentiary are not law enforcement officers under the Tort Claims Act)*; see also Callaway v. New Mexico Department of Corrections*, 117 N.M. 637, 641, 875 P.2d 393, 397 (N.M. Ct. App. 1994) (holding that corrections officers at the state penitentiary are not law enforcement officers under the Tort Claims Act).

[11]In researching this matter, the Court has not found any reported cases deciding the issue of whether N.M. Stat. Ann. § 33-2-15 (1978) creates a private right of action or a right that is enforceable in tort.

be dismissed with prejudice for failure to state a claim on which relief may be granted.  Because the Court concludes that Plaintiff's claim based on N.M. Stat. Ann. § 33-2-15 (1978) is barred by sovereign immunity, it need not address the issue of whether Plaintiff gave proper notice of this claim under the Tort Claims Act.

### 4.  Plaintiff's Claim Regarding the Denial of Recreation

Plaintiff alleges that Defendants Perry, Prescott and Bustos wrote, edited, signed and enforced NMCD policies against Plaintiff which caused him to be denied recreation for one-hundred and twenty consecutive days and thereby subjected him to cruel and unusual punishment in violation of his rights under the Eighth and Fourteenth Amendments to the U.S. Constitution.  *See Amended Civil Complaint* (*Doc. 253*) at ¶¶ 38-44.  Plaintiff appears to be alleging that he was denied *all* forms of recreation during this period.  Plaintiff alleges that these Defendants wrote policies that made recreation a privilege and then approved the taking of privileges for up to one-hundred and twenty days for disobeying a lawful order.  *Id.* at ¶¶ 41-42.[12]  Plaintiff alleges that these Defendants denied him recreation, apparently pursuant to these policies, for one-hundred and twenty consecutive days solely because he wanted to read at night.  *Id.* at ¶ 43.  Plaintiff alleges that Defendants' actions and inactions in relation to this claim constitute deliberate indifference, recklessness and "constructive malice" because Defendants knew, or reasonably should have known, that their actions would subject Plaintiff to an atypical and significant hardship and cruel and unusual punishment in violation of his constitutional rights.  *Id.* at ¶ 44.

Defendants argue that this claim should be dismissed because Plaintiff fails to allege a "sufficiently culpable state of mind" necessary to maintain an Eighth Amendment claim.

---

[12]In his *Amended Civil Complaint* (*Doc. 253*), Plaintiff does not identify the policies at issue in this claim and the Court is unable to determine the relevant policies from the parties' submissions.

***Defendants' Supplemental Brief*** (*Doc. 281*) at 10-11.  Defendants argue that, at best, Plaintiff's allegations implicate only negligence on their part and do not establish the more culpable state of mind required to support a claim under the Eighth Amendment.  *Id.* at 11.

"The Eighth Amendment's prohibition of cruel and unusual punishment imposes a duty on prison officials to provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008).  To succeed on an Eighth Amendment claim, a plaintiff must allege facts demonstrating that "the deprivation is sufficiently serious" and that prison officials acted with "deliberate indifference to inmate health or safety." *Perkins v. Kansas Dep't of Corrections*, 165 F.3d 803, 809 (10th Cir. 1999) (citing *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991)).  Here, dismissal of Plaintiff's denial of recreation claim for failure to state a claim on which relief may be granted is proper only if it is obvious that Plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend.  *See Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

Plaintiff alleges that he was denied recreation for one-hundred and twenty consecutive days as a consequence of wanting to read at night.  The Tenth Circuit, and other courts, have recognized that "some form of regular outdoor exercise is extremely important to the psychological and physical well[-]being of inmates." *Bailey v. Shillinger*, 828 F.2d 651, 653 (10th Cir. 1987); *accord Mitchell v. Rice*, 954 F.2d 187, 191 (4th Cir. 1992) ("[G]enerally a prisoner should be permitted some regular out-of-cell exercise."); *Davenport v. DeRobertis*, 844 F.2d 1310, 1314 (7th Cir. 1988) (upholding decision by district court that allowing inmates in segregation unit only one hour of out-of-cell exercise each week violated the Eighth Amendment).  Moreover, in *Housley v. Dodson*, 41 F.3d 597, 599 (10th Cir. 1994), *abrogated on other grounds by*

*Lewis v. Casey*, 518 U.S. 343 (1996), the Tenth Circuit stated that "[a]lthough we have never expressly held that prisoners have a constitutional right to exercise, there can be no doubt that total denial of exercise for an extended period of time would constitute cruel and unusual punishment prohibited by the Eighth Amendment."  In *Housley*, the Tenth Circuit concluded that an inmate who alleged that he had received only thirty minutes of out-of-cell exercise in three months stated an Eighth Amendment claim.  *Id.* at 599.

In view of these holdings, the Court concludes that Plaintiff's claim for the denial of recreation should not be dismissed for failure to state a claim on which relief may be granted. Accepting the allegations in his amended complaint as true, Plaintiff has alleged that he was denied all recreation for four, consecutive months, and that the named Defendants knew of his continuing deprivation of recreation and acted with deliberate indifference to the risk of harm to his health and well-being posed by the deprivation.  These allegations suffice to state a claim for the denial of recreation in violation of the Eighth Amendment prohibition against cruel and unusual punishment and, therefore, this claim should not be dismissed at this stage of the proceedings.

### 5. *Plaintiff's Claim Regarding the Denial of Placement in the APA*

Plaintiff alleges that Defendants Moore and Warren ignored the fact that Plaintiff had a DSM-IV[13] illness listed in his mental health file and denied him placement in an alternative placement area referred to as the "APA," in violation of his rights under the Eighth and Fourteenth Amendments to the U.S. Constitution.  *See Amended Civil Complaint* (*Doc. 253*) at ¶¶ 45-51, 58.  In connection with this claim, Plaintiff alleges that he has "been diagnosed with a

---

[13]This is an apparent reference to the *Diagnostic and Statistical Manual of Mental Disorders*, or DSM-IV (hereinafter, "DSM-IV"), which is a manual of mental disorders published by the American Psychiatric Association.

DSM-IV illness (ADD/ADHD)," (apparently "Attention-Deficit /Hyperactivity Disorder")[14] and believes that he also suffers from "Attachment Disorder." *Id.* at ¶ 46. Plaintiff alleges that when he entered a Level V/Level VI "supermax" facility, there was an APA for mentally ill prisoners. *Id.* at ¶ 48. He alleges that Defendants Moore and Warren ignored guidelines for his placement in APA, *i.e.*, his diagnosis of Attention-Deficit/Hyperactivity Disorder which he alleges is mentioned in his mental health file, and denied him placement in the APA. *Id.* at ¶ 51, 58. Plaintiff alleges that this denial of placement in APA constituted deliberate indifference, recklessness and gross negligence by Defendants Moore and Warren and violated his rights under the Eighth and Fourteenth Amendments. *Id.* at ¶ 58.

Defendants argue that Plaintiff's allegations regarding this claim fail to show that Defendants Moore and Warren had a sufficiently culpable state of mind to support an Eighth Amendment claim for cruel and unusual punishment. *See **Defendants' Supplemental Brief** (Doc. 281)* at 11-12. Additionally, Defendants argue that substantial deference should be given to these Defendants as professional prison administrators and the Court should not substitute its judgment for that of these expert administrators. *Id.* at 12. Defendants also argue that Plaintiff has failed to state a claim for violation of the Equal Protection Clause of the Fourteenth Amendment related to his alleged denial of placement in the APA. *Id.* at 12-13.

Plaintiff's Eighth Amendment claim relates to his medical treatment by psychologists Moore and Warren for allegedly denying him placement in the APA, based on his diagnosis with a DSM-IV mental illness, contrary to prison guidelines. Prison officials violate the Eighth Amendment when they are deliberately indifferent to the serious medical needs of a prisoner in their custody. *See*

---

[14]The essential feature of "Attention-Deficit/Hyperactivity Disorder," as defined in the DSM-IV, is "a persistent pattern of inattention and/or hyperactivity-impulsivity that is more frequently displayed and more severe than is typically observed in individuals at a comparable level of development." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 85 (4th ed., Text Revision, 2000).

*Estelle v. Gamble*, 429 U.S. 97, 104-06 (1977).  However, a negligent failure to provide adequate medical care, even if it constitutes medical malpractice, does not give rise to an Eighth Amendment violation.  *Id.* at 105-06.  Furthermore, a prisoner who merely disagrees with a diagnosis or prescribed course of treatment by medical staff does not state a constitutional violation.  *Id.* at 107.

Having reviewed Plaintiff's amended complaint and the *Martinez* Report filed in this case, to which the amended complaint refers, the Court concludes that Plaintiff's amended complaint fails to state an Eighth Amendment claim for denial of placement in the APA.  Plaintiff's amended complaint cites a specific policy for the mental health screening of Level V and VI inmates, by reference to the *Martinez* report in this case, which Plaintiff alleges was violated by Defendants Moore and Warren in denying him placement in the APA.  *See* ***Amended Civil Complaint*** (*Doc. 253*) at ¶ 50.  A review of this policy clearly shows that the final decision of whether to place Level V and VI inmates in regular or APA housing, following screening, was a medical decision made by the Clinical Director of Psychiatry, and that placement in the APA was not mandated by an inmate's diagnosis with a DSM-IV mental illness.  *See* ***Martinez Report and Motion for Summary Judgment*** (*Doc. 101*) at D 00941-43.[15]  Moreover, the list of DSM-IV diagnoses listed in the policy that were relevant to the housing assignment decision made by the Clinical Director of Psychiatry did not include Attention-Deficit/Hyperactivity Disorder.  *Id.* at D 00941-42.  Thus, the policy relied on by Plaintiff did not mandate his placement in the APA even if he suffered from Attention-Deficit/Hyperactivity Disorder at the time of his mental health screening and Plaintiff's disagreement with the medical

---

[15]This policy, NMCD Policy No. CD-143006, states, in part, regarding an inmate with positive screening, that "[t]he facility Warden and the NMCD Director of Offender Services may provide input into the housing assignment (regular or APA) of such an inmate to the Clinical Director of Psychiatry."  It further states that "[t]he Clinical Director of Psychiatry will make the final decision on placement for any such inmates."  ***Martinez Report and Motion for Summary Judgment*** (*Doc. 101*) at D 00942.

decision not to house him in the APA made by the Clinical Director of Psychiatry is not sufficient to establish an Eighth Amendment violation. *See Perkins v. Kansas Dep't. of Corrections*, 165 F.3d 803, 811 (10th Cir. 1999) (plaintiff's mere disagreement with medical staff regarding the course of his treatment did not give rise to an Eighth Amendment claim for deliberate indifference to serious medical needs).[16]  Thus, Plaintiff cannot prevail on this claim and it should be dismissed with prejudice.

Although Plaintiff references the Fourteenth Amendment in this claim, it does not appear that he is asserting independent claims under the Fourteenth Amendment for violation of his rights to procedural due process or equal protection but rather is only asserting a claim under the Eighth Amendment, as applied to the states through the Fourteenth Amendment.  Plaintiff does not allege that the denial of APA placement imposed an atypical and significant hardship on him in relation to the ordinary incidents of prison life, which is required to support a due process claim. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (prison conditions that "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" may create a liberty interest protected by the Due Process Clause of the Fourteenth Amendment).  Nor does he allege that he was treated differently than other, similarly situated  inmates, which is required to support an equal protection claim. *See Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996) ("An equal protection violation occurs when the government treats someone differently than another who is similarly situated.").  Additionally, in his response to the ***Motion to Dismiss*** (*Doc. 262*), Plaintiff disclaims any assertion of equal protection claims in his amended complaint. *See*

---

[16]The Court may consider NMCD Policy No. CD-143006 on this ***Motion to Dismiss*** (*Doc. 262*) because it is central to Plaintiff's claim and referenced in his amended complaint, and its authenticity is not in dispute.  *See Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253-54 (10th Cir. 2005) ("We have recognized however, that a document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss, at least where the document's authenticity is not in dispute.").

*Response* (*Doc. 264*) at ¶ 19.   Therefore, the Court concludes that in regard to being denied placement in the APA, Plaintiff has failed to state a claim for the violation of his rights to due process and equal protection under the Fourteenth Amendment.

### 6. *Plaintiff's Claim Regarding the Behavioral Program Contract Policies*

Plaintiff alleges that in implementing an NMCD behavioral program contract policy, Defendants Ulibarri, Perry, Prescott and Bustos changed the policy in a way that prevented Plaintiff from using it which violated his rights under the Eighth and Fourteenth Amendments to the U.S. Constitution.  *See Amended Civil Complaint* (*Doc. 253*) at ¶ 59-65.   Additionally, Plaintiff alleges that a related policy, designed to implement the behavioral program contract policy, is unconstitutional on its face because it amounts to cruel and unusual punishment.  *Id.* at ¶ 63.

Plaintiff's allegations in this claim are rather confusing.   He seems to allege that in implementing a new level system in July of 2000, Defendants copied a behavioral program contract policy from the Colorado Department of Corrections that was intended to be used for inmates in custody levels V and VI only when other management techniques failed to control their overt negative behavior.   *Id.* at ¶ 61; *Notice and Motion for Leave to File Amended and Supplemental Complaint* (*Doc.  174*), Exhibit BP-13.[17]  Plaintiff seems to allege that a related policy, designed to implement the behavioral program contract policy, conflicted with this stated intent by extending behavioral program contracts to inmates in all custody levels and limiting the use of behavioral program contracts to inmates who "regardless of Step, . . . persist[ed] in assaultive behavior, disruptive behavior, and/or acts of sexual misconduct."  *See Amended Civil Complaint* (*Doc. 253*) at ¶¶ 61-63; *Notice and Motion for Leave to File Amended and Supplemental*

---

[17]Plaintiff attached the first page of this policy, which is CD Policy No. 143000, to *Document 174*.  *See Notice and Motion for Leave to File Amended and Supplemental Complaint* (*Doc.  174*), Exhibit BP-13.

*Complaint* (*Doc. 174*), Exhibits BP-6 to BP-11.[18]   Plaintiff alleges that this change in implementation of the behavioral program contract policy was done to keep him from using a behavioral program contract, although he does not specify how.  *See **Amended Civil Complaint*** (*Doc. 253*) at ¶¶ 63, 64.  Additionally, Plaintiff alleges that the form of behavioral program contract used for these policies is not a true contract, because an inmate's signature on a contract is not required.  *See **Amended Civil Complaint*** (*Doc. 253*) at ¶ 63; ***Notice and Motion for Leave to File Amended and Supplemental Complaint*** (*Doc. 174*), , Exhibit BP-6.

Defendants argue that Plaintiff's claim regarding behavioral program contracts should be dismissed because Plaintiff has failed to allege an actionable claim under the Eighth and Fourteenth Amendments for deliberate indifference to his serious medical needs or otherwise state a claim for cruel and unusual punishment.  ***Defendants' Supplemental Brief*** (*Doc. 281*) at 13-15.  Defendants also contend that Plaintiff has failed to state a claim for violation of the Equal Protection Clause of the Fourteenth Amendment related to the behavioral program contract policies.  *Id.* at 15-16.

Having reviewed Plaintiff's amended complaint and the materials in *Document 174* to which it refers, the Court concludes that Plaintiff's allegations regarding the behavioral program contract policies fail to state a claim on which relief can be granted for violation of the Eighth and Fourteenth Amendments.  Although Plaintiff has alleged that Defendants Ulibarri, Perry, Prescott and Bustos acted with "deliberate indifference" in implementing the behavioral program contract policy,[19] Plaintiff's allegations do not demonstrate a deprivation "of the minimal measure of life's necessities," which is required to state a claim upon which relief may be granted under the Eighth Amendment.  *See Trujillo v. Williams*, 465 F.3d 1210, 1225 n. 17 (10th Cir. 2006)

---

[18]Plaintiff attached a copy of this policy, which is CD Policy No. 143004, to *Document 174*.  *See **Notice and Motion for Leave to File Amended and Supplemental Complaint*** (*Doc. 174*), Exhibits BP-6 to BP-11.

[19]*See **Amended Civil Complaint*** (*Doc. 253*) at ¶ 65.

(citing *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998)).  For the same reason, Plaintiff's

argument that  CD Policy No. 143004 is unconstitutional on its face has no legal merit in relation

to his Eighth Amendment claim.  His amended complaint does not allege facts supporting a claim

that CD Policy No. 143004 mandates deprivation of the measure of life's necessities in violation of

the Eighth Amendment.  Furthermore, Plaintiff does not allege that he was denied a behavioral

program contract in a manner that imposed an "atypical and significant hardship [on him] in relation

to the ordinary incidents of prison life[,]" as required to support a due process claim for deprivation

of a liberty interest.  *See Sandin v. Conner*, 515 U.S. 472, 484 (1995).  Nor does he allege that he

was treated differently than other, similarly situated inmates, which is required to support an equal

protection claim, *see Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996), and Plaintiff has

disclaimed any assertion of equal protection claims in his amended complaint.  *See **Response***

(*Doc. 264*) at ¶ 19.  Based on the foregoing, the Court concludes that Plaintiff's claim regarding the

behavioral program contract policies should be dismissed with prejudice for failure to state a claim

on which relief can be granted.

### 7.  *Plaintiff's Claim Regarding Visual Anal Examination Policy*

Plaintiff alleges that Defendant LeMaster, who he contends is the former Warden of PNM

and the current Director of Adult Prisons, wrote and signed NMCD Policy PNM-032401 which

subjects maximum security prisoners to visual anal examinations when going from one secure area

of the prison to another.  *See **Amended Civil Complaint*** (*Doc. 253*) at ¶¶ 20, 66-71.  Plaintiff alleges

that pursuant to this policy he was subjected to such a search by a Lieutenant Valdez on

June 7, 2001, and that he continues to be subjected to such searches by unnamed guards any time

they want to harass or retaliate against him.  *Id.* at ¶ 70.  Plaintiff alleges that the writing and signing

26

of the visual anal search policy by Defendant LeMaster violated Plaintiff's rights under the Fourth Amendment to the U.S. Constitution. *Id.* at ¶ 71.[20]

Defendant LeMaster argues in a conclusory fashion that this claim is barred because it is not a violation of the Fourth Amendment to perform a body cavity search on an incarcerated individual provided that "administrative practices are implemented in the genuine interest of safeguarding institutional security." *See **Defendants' Supplemental Brief** (Doc. 281)* at 16 (internal quotation marks and citation omitted). LeMaster argues that the mere fact that Plaintiff was incarcerated in a maximum-security area when he was subjected to the alleged anal exams demonstrates the existence of a genuine interest of safeguarding institutional security. *Id.*

The Court need not reach Defendant's argument regarding this claim. Based on the allegations in the amended complaint, this claim should be dismissed with prejudice *sua sponte* because it fails to allege direct personal involvement by Defendant LeMaster in the searches of which Plaintiff complains. Individual liability under 42 U.S.C. § 1983 requires personal participation by an individual defendant in the alleged constitutional violation. *See Foote v. Spiegel*, 118 F.3d 1416, 1423-24 (10th Cir. 1997); *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996). This necessitates an affirmative link between the alleged constitutional violation and a defendant's own participation or failure to supervise. *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993). Here, Plaintiff's allegations against Defendant LeMaster are premised solely on LeMaster's alleged involvement in writing and signing the search policy at issue. Plaintiff does not allege that LeMaster ever searched Plaintiff or that LeMaster was otherwise directly involved in any search to which Plaintiff was subjected. Thus, this claim fails to allege the requisite personal

---

[20]Plaintiff attached a portion of this policy to his ***Notice and Motion for Leave to File Amended and Supplemental Complaint*** (*Doc. 174*), as Exhibit SS-7. This portion of the policy states, in part: "The body can serve as a hiding place for contraband. It may be necessary to strip an inmate of clothing and search his body at various times [including] . . . as the inmate moves from one area of the Penitentiary to another." *Id.*

participation by Defendant LeMaster in the allegedly unconstitutional searches of Plaintiff's body which is necessary to state a claim under § 1983. *See Whitington v. Ortiz*, No. 07-1425, 307 Fed. Appx. 179, 2009 WL 74471, **9-10 (10th Cir. Jan 13, 2009) (unpublished) (prisoner failed to state a claim under § 1983 against prison director whose liability was based almost entirely on his responsibility for instituting prison regulations and no other connection was alleged between him and the plaintiff's affairs).

### 8. *Plaintiff's Claim Regarding the Suspension of Visits With his Wife*

Plaintiff alleges that Defendants Tafoya, Shanks, Ulibarri, Prescott and Casaus suspended Plaintiff's visits with his wife, without giving him notice of the suspension or a time limit on how long the suspension would last, and by doing so violated his rights under the First and Fourteenth Amendments to the U.S. Constitution. *See **Amended Civil Complaint** (Doc. 253)* at ¶ 89. Additionally, Plaintiff alleges that in suspending his wife's visits for a total of four years and six months, Defendants Tafoya, Shanks, Ulibarri and Casaus acted with deliberate indifference and subjected Plaintiff to an atypical and significant hardship, thereby violating his rights under the Fourteenth Amendment to the U.S. Constitution. *Id.* at ¶¶ 74, 90.

In connection with these claims, Plaintiff alleges that his visits with his wife were suspended administratively, without a hearing or notice, by Defendants Tafoya, Shanks, Ulibarri and Casaus after Plaintiff was caught trying to have a cellular phone mailed to him to alleviate high phone charges. *Id.* at ¶¶ 74-76. Plaintiff concedes that he pled guilty to a prison disciplinary charge for this incident with the cellular phone, but he alleges that suspension of his wife's visits was not part of his agreement to plead guilty to the disciplinary charge. *Id.* at ¶ 75. Plaintiff alleges that he and his wife requested reinstatement of these visits in October of 2000, but this request was denied. *Id.* at ¶ 77. Plaintiff alleges that he filed a grievance for reinstatement of these visits in June of 2001

and his grievance was denied. *Id.* at ¶ 78. Plaintiff alleges that his wife reapplied for visiting privileges in June of 2001, and filled out the proper paperwork, but her request was denied. *Id.* at ¶¶ 82-83. Plaintiff alleges that his visits with his wife were not reinstated until November of 2004, and that he was not able to visit his wife for a total of four years and six months. *Id.* at ¶¶ 87-88.

In arguing for the dismissal of these claims, Defendants contend that Plaintiff's visiting privileges with his wife were suspended as a direct consequence of his attempt to have a cellular phone mailed to him in violation of prison rules. *See **Defendants' Supplemental Brief** (Doc. 281)* at 17. Defendants also contend that Plaintiff's wife failed to fill out the proper application to reinstate her visiting privileges. *Id.* Defendant's legal argument for dismissal of these claims is difficult to follow, but Defendants appear to argue that this claim should be dismissed because: (1) a prisoner's due process rights are subject to reasonable limitations in light of legitimate security concerns in a prison; (2) substantial deference should be given to the professional judgment of the Defendant prison administrators; (3) lawful incarceration brings about necessary limitation of a prisoner's rights and privileges; and (4) it is inappropriate for the Court to substitute its judgment for the judgment of Defendants who are prison administrators. *Id.* at 17-18. Defendants also argue the Plaintiff has failed to state a claim under the Equal Protection Clause of the Fourteenth Amendment because he has not alleged or shown that he was treated differently than other prisoners similarly situated to him or that any differential treatment he did sustain was not reasonably related to a legitimate, penological interest. *Id.* at 18-19.

The issue before the Court is whether Plaintiff states a claim upon which relief may be granted regarding the suspension of visits with his wife. The Court construes Plaintiff's claim as implicating his right of association under the First Amendment and his right to procedural due process under the Fourteenth Amendment. Plaintiff's claim also implicates his right to be free of

cruel and unusual punishment under the Eighth Amendment in regard to the alleged duration of the suspension.

Prisoners retain a limited constitutional right of association while they are incarcerated. *See Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) (assuming that prisoners retain some right of association while incarcerated). However, "[a]n inmate does not retain rights inconsistent with proper incarceration" and "freedom of association is among the rights least compatible with incarceration." *Id.* Plaintiff has not directed this Court to any reported decision of the U.S. Supreme Court or the Tenth Circuit Court of Appeals recognizing a prisoner's independent constitutional right to spousal visitation under the First Amendment and the Court has not found one. Accordingly, the Court declines to find that Plaintiff states a claim for denial of a right to spousal visitation under the right of association protected by the First Amendment.

Nor has Plaintiff identified, or the Court found, any reported Supreme Court or Tenth Circuit decision recognizing an independent constitutional right to prison visitation under the Due Process Clause of the Fourteenth Amendment in these circumstances. Although the Constitution can create a protectible liberty interest if corrections officials impose restraints on a prisoner which exceed the prisoner's sentence "in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force," *Sandin v. Conner*, 515 U.S. 472, 484 (1995), Plaintiff has not alleged facts that rise to the level of egregious conduct necessary to implicate this guaranty of the Due Process Clause. *See also Kentucky Dep't. of Corrections v. Thompson*, 490 U.S. 454, 461 (1989) ("The denial of prison access to a particular visitor 'is well within the terms of confinement ordinarily contemplated by a prison sentence,' and therefore is not independently protected by the Due Process Clause.") (citing *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)).

Based solely on the foregoing analysis, the Court would conclude that Plaintiff has not asserted an actionable claim that he was deprived of a constitutionally protected interest in visitation with his wife that entitled him to procedural due process safeguards under the Due Process Clause of the Fourteenth Amendment. *See Kentucky Dep't. of Corrections v. Thompson*, 490 U.S. at 460 ("We examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State[]; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.") (citations omitted). However, in his response to Defendants' **Motion to Dismiss** (*Doc. 262*), Plaintiff argues that he is asserting a state-created liberty interest in spousal visitation, based on unspecified prison regulations, the deprivation of which imposed an atypical hardship in relation to the ordinary incidents of prison life thereby entitling him to procedural due process protections. *See* **Response** (*Doc. 264*) at ¶¶ 33-34. As authority for his argument, Plaintiff points to a New Mexico Supreme Court decision, *Cordova v. LeMaster*, 136 N.M. 217, 222-23, 96 P.3d 778, 783-84 (2004), recognizing a protected liberty interest in spousal visitation derived from NMCD prison regulations governing visitation. *Id.* at ¶ 33. In *Cordova*, the New Mexico Supreme Court held that the prisoner petitioner had "a liberty interest, conferred by Department of Corrections regulations, to spousal visitation, which if indefinitely deprived would impose upon him an atypical and significant hardship." *Id.* at 223, 784.

Liberty interests protected by the Due Process Clause of the Fourteenth Amendment may arise from state law. *See Sandin v. Conner*, 515 U.S. at 483-84. Although Plaintiff does not specifically assert a state-created liberty interest in spousal visitation in his amended complaint, the Court will liberally construe his amended complaint as alleging such an interest as a basis for his procedural due process claim related to spousal visitation. A pro se litigant's pleadings are to be

liberally construed and held to a less stringent standard than formal pleadings drafted by a lawyer. *Hall v. Bellmon*, 935 F. 2d 1106, 1110 (10th Cir. 1991).  Under this standard, "if the court can reasonably read the pleadings to state a valid claim . . . it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Id.*  Accordingly, the Court concludes that Plaintiff's amended complaint states a claim for suspension of his spousal visitation without procedural due process based on a state-created liberty interest.  To prevail on this claim, it will be necessary for Plaintiff to prove that he has a constitutionally protected liberty interest under the standard enunciated in *Sandin v. Conner*, 515 U.S. at 484 (deprivation of state-created liberty interest must "impose[] [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" to be afforded procedural safeguards of the Due Process Clause), and that he was deprived of the interest without the procedural safeguards afforded by the Due Process clause of the Fourteenth Amendment.

In regard to Plaintiff's Eighth Amendment claim concerning spousal visitation, the Court finds that Plaintiff has failed to state a claim for cruel and unusual punishment related to the alleged four and one-half year suspension of visits with his wife.  The Tenth Circuit has held that visitation with a particular person is not a basic necessity, the denial of which would violate a prisoner's rights under the Eighth Amendment.  *See Wirsching v. Colorado,* 360 F.3d 1191, 1205 (10th Cir. 2004) (citing *Kentucky Dep't. of Corrections v. Thompson*, 490 U.S. at 461).

Finally, in response to Defendants' argument in their supplemental brief, the Court finds that Plaintiff's amended complaint fails to state an equal protection claim under the Fourteenth Amendment for the denial of visits with his wife.  Plaintiff has not alleged that he was treated differently than other similarly situated prisoners in regard to spousal visits and has conceded

in his response to Defendants' **Motion to Dismiss** (*Doc. 262*) that he is not asserting any equal protection claims in his amended complaint.  *See **Response** (Doc. 264)* at ¶ 19.

Thus, the Court concludes that Plaintiff has failed to state a claim regarding the denial of spousal visitation with the exception of his claim of a state-created liberty interest in such visitation that he was deprived of in violation of the Due Process Clause of the Fourteenth Amendment.

### 9.  *Plaintiff's Claim Regarding the Denial of Money Orders From His Wife*

Plaintiff alleges that Defendants Mares, Ulibarri, Prescott and Shanks, acting in an arbitrary and capricious manner, denied Plaintiff money orders from his wife which violated his rights under the Fourteenth Amendment to the U.S. Constitution.  *See **Amended Civil Complaint** (Doc. 253)* at ¶ 91.  In connection with this claim, Plaintiff alleges that his wife sent him money orders on three different occasions in 2001 and 2002, which Defendant Mares arbitrarily and capriciously rejected in response to prison regulations.  *Id.* at ¶¶ 79-81.  Plaintiff alleges that he filed grievances and asked to receive this money but the grievance officer was told by Defendant Prescott that the money was correctly returned to the sender.  *Id.* at ¶ 84-85.  Plaintiff alleges that his grievances and requests regarding this matter were denied by Defendants Ulibarri, Casaus and Shanks.  *Id.* at ¶ 86.  Plaintiff alleges that he was not able to receive money from, or send money to, his wife for a total of twenty-three months.  *Id.* at ¶ 88.

In their supplemental brief, Defendants argue that Plaintiff's own referenced exhibit in his amended complaint[21] shows that his wife was not allowed to submit money to him under

---

[21]This exhibit, which is referenced in Plaintiff's **Amended Civil Complaint** (*Doc. 253*) at ¶ 79, and purportedly signed by Defendant Shanks, denies a grievance filed by Plaintiff regarding the rejection of a money order sent to Plaintiff by his wife.  As authority for denial of the grievance, this document cites "PNM-Policy-012401" which it quotes as stating, in regard to money sent to a inmate as a gift, that "[i]f the funds are a gift, the sender's name must appear on the inmate's list of visitors."  **See Notice and Motion for Leave to File Amended and Supplemental Complaint** (*Doc. 174*), Exhibit SV-8.  This document goes on to state that in Plaintiff's case "your wife was suspended and is not currently allowed to visit or send you funds due to the fact that you cannot receive funds via-mail from a suspended visitor."  *Id.*  Plaintiff attached a copy of the cited policy to *Document 174* as Exhibit SV-27.

PNM Policy No. 012401 because her visitation privileges had been suspended and she was not on his list of visitors.  *See Defendants' Supplemental Brief* (*Doc. 281*) at 17.  Defendants contend that her visitation privileges were suspended as a consequence of her attempt to mail Plaintiff a cell phone in prison which was prohibited.  *Id.*  Additionally, Defendants argue that the due process rights of prisoners are subject to reasonable limitation in light of legitimate security concerns.  *Id.* Defendants further argue that substantial deference is given to the professional judgment of prison administrators and it is inappropriate for the Court to substitute its judgment for that of Defendant prison administrators.  *Id.* at 17-18.  Defendants also argue that Plaintiff has failed to assert an equal protection claim related to denial of the money orders.  *Id.* at 18-19.  Plaintiff does not dispute that the money orders in question were returned pursuant to PNM Policy No. 012401.  Nor does he allege that this policy is invalid or that his wife was on his list of visitors.

The Court construes this claim as alleging that Plaintiff was deprived of property, *i.e.* the money orders sent to him by his wife, in violation of his procedural due process rights under the Fourteenth Amendment.  However, Plaintiff can only maintain a due process claim under the Fourteenth Amendment if he had a constitutionally protected property interest in the money orders with which Defendants interfered.  *See Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006).  Here, the money orders sent to Plaintiff by his wife were contraband under PNM Policy No. 012401 because she was not on his list of visitors.[22]  On the basis of Plaintiff's allegations, the Court concludes that Plaintiff did not have a constitutionally protected property interest in the money orders.  *See Steffey v. Orman*, 461 F.3d at 1223 (prisoner's interest in a fifty-dollar money order sent to prison by another inmate's mother contrary to prison regulations "was no more than an inchoate,

---

[22]Plaintiff does not allege that PNM Policy No. 012401 is an invalid policy or that his wife was on his list of visitors.

unrealized expectation in a gift of contraband funds."). "'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'" *Id.* (quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)). Here, Plaintiff's allegations fail to support a conclusion that Plaintiff had a legitimate claim of entitlement to the money orders sent by his wife and a constitutionally protected property interest in his expectation of the gift of those orders. Therefore, the Court concludes that Plaintiff fails to state a claim under the Fourteenth Amendment for the return of his wife's money orders.

### 10. *Plaintiff's Claim Regarding Sixteen Consecutive Months of Disciplinary Segregation*

Plaintiff alleges that Defendants Perry, Bustos, Ulibarri, Prescott, Shanks and LeMaster wrote, edited, signed and enforced an NMCD policy against Plaintiff that subjected him to sixteen consecutive months of disciplinary segregation which constituted cruel and unusual punishment and caused the violation of his rights under the Eighth and Fourteenth Amendments to the U.S. Constitution. *See Amended Civil Complaint* (*Doc. 253*) at ¶¶ 94, 96-97. In connection with this claim, Plaintiff alleges that the actions and inactions of these Defendants, in subjecting him to this segregation period, constituted malice, deliberate indifference, callous and reckless indifference, gross negligence, and recklessness. *Id.* at ¶¶ 96-97.

In their supplemental brief, Defendants argue that Plaintiff cannot show that these Defendants acted with a sufficiently culpable state of mind to maintain an Eighth Amendment claim which requires a showing that Defendants acted with deliberate indifference to Plaintiff's health and safety in keeping him in segregation. *See Defendants' Supplemental Brief* (*Doc. 281*) at 21. Additionally, Defendants argue that Plaintiff fails to allege any harm that he suffered as a result of his confinement in segregation. *Id.* Defendants also argue that Plaintiff was placed in segregation

due to his bad behavior; he offers no "evidence" to substantiate whether his confinement was atypical compared to others in segregation; and his classification into segregation does not involve deprivation of a liberty interest independently protected by the Due Process Clause.  *Id.* at 21-22.

The Court concludes that Plaintiff's amended complaint fails to state a claim for an Eighth Amendment violation of his right to be free from cruel and unusual punishment because it does not allege that he suffered any injury, or risk of injury, from being placed in segregation for sixteen months.  "[A] prison official violates the Eighth Amendment only when two requirements are met.  First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities[.]" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations marks and citations omitted). Second, the prison official "must have a sufficiently culpable state of mind," which means the official may not be "found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety[.]"  *Id.* at 834, 837 (internal quotation marks and citations omitted).

Here, Plaintiff alleges in conclusory statements that he was placed in disciplinary segregation for sixteen consecutive months at prison level "6-1" with no privileges, apparently as a consequence of what he characterizes as Defendants' "severe" disciplinary policies.  ***Amended Civil Complaint*** (*Doc. 253*) at ¶¶ 94-95.  Apart from the denial of recreation during this period, as to which he asserts a separate claim in his amended complaint,[23] Plaintiff offers no detail regarding the privileges he was deprived of and does not allege that he suffered any injury, or risk of injury, as a consequence of his placement in segregation.  Therefore, the Court concludes that apart from the alleged denial of

---

[23]As part of this claim, Plaintiff alleges that during his sixteen-month period of disciplinary segregation, he was denied recreation for one-hundred and twenty consecutive days.  *See **Amended Civil Complaint*** (*Doc. 253*) at ¶ 94.  This denial of recreation is the subject of a separate cruel and unusual punishment claim which is addressed above in section four of the "Analysis" portion of these Proposed Findings and Recommended Disposition.

recreation, Plaintiff fails to state a claim for the violation of his right to be free from cruel and unusual punishment based on his placement in disciplinary segregation for sixteen consecutive months.  Plaintiff's allegations fail to demonstrate a deprivation "of the minimal civilized measure of life's necessities," required to state a claim under the Eighth Amendment, *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998) (internal quotation marks and citations omitted), and fail to allege any injury or risk of injury from the deprivation.

Although Plaintiff references the Fourteenth Amendment in his claim regarding disciplinary segregation, it does not appear that he is asserting independent claims under the Fourteenth Amendment for violation of his rights to procedural due process and equal protection but rather is only asserting a claim under the Eighth Amendment, as applied to the states through the Fourteenth Amendment.  The mere placement of Plaintiff in disciplinary segregation does not implicate a liberty interest entitled to due process protection.  *See Sandin v. Connor*, 515 U.S. 472, 484-486 (1995).  Moreover, Plaintiff has not alleged that his due process rights were violated or alleged that the conditions of his disciplinary segregation imposed an atypical and significant hardship in relation to the ordinary incidents of prison life.  *See Sandin v. Conner*, 515 U.S. at 484 (prison conditions that "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" may create a liberty interest protected by the Due Process Clause of the Fourteenth Amendment); *compare Trujillo v. Williams*, 465 F.3d 1210, 1225 (10th Cir. 2006) (prisoner stated due process claim for placement in segregation where his complaint specifically alleged that he spent over seven-hundred and fifty days in segregation and other inmates remained in segregation for the most serious offenses for only one-hundred and eighty days).  Nor does Plaintiff allege that he was treated differently than other, similarly situated  inmates, which is required to support an equal protection claim.  *See Penrod v. Zavaras*, 94 F.3d 1399, 1406

(10th Cir. 1996) ("An equal protection violation occurs when the government treats someone differently than another who is similarly situated."). Additionally, in his response to the **Motion to Dismiss** (*Doc. 262*), Plaintiff disclaims any assertion of equal protection claims in his amended complaint. *See* **Response** (*Doc. 264*) at ¶ 19. Consequently, the Court concludes that in regard to being placed in disciplinary segregation, Plaintiff has failed to state a claim for the violation of his rights to due process and equal protection under the Fourteenth Amendment.[24]

### *Plaintiff's Motion for Leave to Amend Complaint*

This case commenced on March 1, 2004, when Plaintiff filed his original **Civil Complaint** (*Doc. 1*). On March 31, 2008, the presiding judge entered an order granting Plaintiff leave to file an amended complaint as a matter of right pursuant to Fed. R. Civ. P. 15(a)(1)(A) because Defendants had not yet filed a pleading in response to the original complaint. *See* **Order Adopting Magistrate Judge's Proposed Findings and Recommended Disposition** (*Doc. 251*). Plaintiff filed his **Amended Civil Complaint** (*Doc. 253*) on April 29, 2008, in response to which Defendants filed their answers and the **Motion to Dismiss** (*Doc. 262*) that is the subject of these Proposed Findings and Recommended Disposition.

---

[24]The Court acknowledges a body of Tenth Circuit case law holding that a district court errs in *sua sponte* dismissing a prisoner's procedural due process claim under 28 U.S.C. § 1915(e)(2)(B)(ii) if it does not have sufficient evidence before it to "fully address both the duration and degree of [the] plaintiff's restrictions as compared with other inmates." *Perkins v. Kan. Dep't. of Corr.*, 165 F.3d 803, 809 (10th Cir. 1999); *cited with approval in Trujillo v. Williams*, 465 F.3d 1210, 1225 (10th Cir. 2006). However, the Court finds this case to be distinguishable. Here, Plaintiff's amended complaint fails to allege that his procedural due process rights were violated by his placement in disciplinary segregation and, except for being denied recreation, omits any description of the conditions of his confinement as compared with other inmates, apart from a single, conclusory allegation that he was confined in segregation "with no privileges." **Amended Civil Complaint** (*Doc. 253*) at ¶ 94. At best, construing Plaintiff's amended complaint liberally, it contains only a conclusory assertion that his right to procedural due process was violated by his placement in disciplinary segregation, with no supporting factual allegations. Conclusory assertions of constitutional violations without supporting factual allegations do not suffice to state a claim for which relief may be granted and warrant dismissal *sua sponte* under § 1915(e)(2)(B)(ii). *See Northington v. Jackson*, 973 F.2d 1518, 1520-21 (10th Cir. 1992) (noting that although the court should liberally construe a pro se plaintiff's complaint, "the court should not assume the role of advocate, and should dismiss claims which are supported only by vague and conclusory allegations").

In his ***Motion for Leave to Amend Complaint*** (*Doc. 289*), Plaintiff seeks leave of the Court to amend his ***Amended Civil Complaint*** (*Doc. 253*) pursuant to Fed. R. Civ. P. 15(a)(2).  Pursuant to D.N.M.LR-Civ. 15.1, Plaintiff has attached to his motion, as an unmarked exhibit, a copy of a twenty-five page proposed second amended complaint.  *See* Attachment 1 (*Doc. 289-2*) to *Document 289*.  This proposed second amended complaint incorporates by reference most, but not all, of the allegations in Plaintiff's ***Amended Civil Complaint*** (*Doc. 253*) which is twenty-eight pages long.  *See* Attachment 1 (*Doc. 289-2*) to *Document 289*.  Additionally, Plaintiff's proposed second amended complaint would: (1) add additional existing Defendants to most of Plaintiff's existing claims; (2) delete most of his remaining state law claims; (3) modify the case caption and the factual and legal allegations of his existing claims; (4) reference multiple additional documents from the record of this case and Plaintiff's Case No. CV-07-0609 BB/LAM filed in this district; and (5) greatly expand his prayer for relief by adding significant detail to his existing requests for declaratory and injunctive relief, and compensatory and punitive damages.  *Id.*

Leave to amend a pleading should be freely granted "when justice so requires." Fed. R. Civ. P. 15(a)(2).  However, factors which militate against granting leave to amend include undue delay, prejudice to the opposing party and futility of the amendment.  *See Wessel v. City of Albuquerque*, 299 F.3d 1186, 1196-97 (10th Cir. 2002) (affirming denial of leave to amend based on undue delay); *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1130 (10th Cir. 1998) (affirming denial of leave to amend based on undue delay and prejudice to opposing party where motion to amend was filed a full year after the date of the initial pleading); *Jefferson County School District No. R-1 v. Moody's Investor's Services, Inc.*, 175 F.3d 848, 858-861 (10th Cir. 1999) (affirming denial of leave to amend based on futility of proposed amendments). In this case, the Court has determined that Plaintiff's motion should be denied because of Plaintiff's

39

undue delay in seeking to amend his complaint a second time, because granting Plaintiff's motion will prejudice Defendants, and because Plaintiff's proposed amendments will not cure the deficiencies in his *Amended Civil Complaint* (*Doc. 253*) identified in these Proposed Findings and Recommended Disposition**.**

Here, Plaintiff's motion was filed **__after__**: (1) this case had been pending for more than five years; (2) Plaintiff's *Amended Civil Complaint* (*Doc. 253*), filed as a matter of right, had been pending for more than one year; (3) a *Martinez* report for this case, which is related to claims in Plaintiff's existing amended complaint, was completed after a protracted delay caused in large part by the parties; and (4) Defendants' *Motion to Dismiss* (*Doc. 262*) was filed and fully briefed. Moreover, it appears from his proposed second amended complaint that Plaintiff was aware of most of the information on which his proposed amended claims are based prior to filing his *Amended Civil Complaint* (*Doc. 253*) and that he could have included most, if not all, of those claims in his *Amended Civil Complaint* (*Doc. 253*).  Delay is a significant factor which the Court must consider in ruling on a motion to amend a complaint.  *See Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365-1366 (10th Cir. 1993) ("It is well settled in this circuit that untimeliness alone is a sufficient reason to deny leave to amend . . ., especially when the party filing the motion has no adequate explanation for the delay . . . [and] the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint . . . ." (citations omitted)); *see also Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998) ("Where [a] party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial.") (alteration in original; quotation omitted).  Plaintiff has already amended his complaint once in this proceeding, as a matter of right.  Plaintiff has made no

showing in his motion that would justify his long delay in seeking to amend his complaint a second time, nor has he explained why these proposed amendments were not, or could not have been, included in his *Amended Civil Complaint* (*Doc. 253*).

The Court also finds that Defendants will be prejudiced if Plaintiff's motion is granted. A *Martinez* report has been completed for this case and Defendants' *Motion to Dismiss* (*Doc. 262*) is fully briefed and ready for ruling. If Plaintiff's motion is granted, the changes to his claims will alter the structure of this case and will further delay the resolution of this case on the merits. All Defendants will have to be given time to respond to the amended complaint and their pending dispositive motion will be moot. This increase in the complexity of the case and further delay of a decision on the merits will unduly prejudice the Defendants.

Finally, the amendments proffered by Plaintiff in his proposed second amended complaint fail to cure the deficiencies of his *Amended Civil Complaint* (*Doc. 253*) identified in these Proposed Findings and Recommended Disposition. Thus, denial of Plaintiff's motion is also appropriate on that ground. *See Scott v. Hern*, 216 F.3d 897, 906 (10th Cir. 2000) ("If the proffered amendments fail to cure the deficiencies of the original complaint or if the newly asserted claims would be futile, denial of a motion to amend is appropriate.").

Accordingly, the Court recommends that Plaintiff's *Motion for Leave to Amend Complaint* (*Doc. 289*) be denied.

### RECOMMENDED DISPOSITION

Based on the foregoing, the Court recommends that *Defendants' Motion to Dismiss* (*Doc. 262*) be **GRANTED IN PART** and the following claims in Plaintiff's *Amended Civil Complaint* (*Doc. 253*) be **dismissed with prejudice**, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim on which relief may be granted:

1.      Defendants Perry, Williams, Bustos and Prescott wrote, edited, signed and enforced New Mexico Corrections Department (hereinafter, "NMCD") policies against Plaintiff that denied him the right to possess religious and legal books, magazines and newspapers, and restricted his possession of letters, in violation of his rights under the Fourth Amendment to the U.S. Constitution and his rights to due process and equal protection under the Fourteenth Amendment to the U.S. Constitution;

2.      Defendants Perry, Williams, Bustos, Prescott, Sedillo, LeMaster, Beals and Thompson wrote, edited, signed and enforced NMCD policies against Plaintiff that did not conform to law prescribed for the governance of the penitentiary in accordance with N.M. Stat. Ann. § 33-2-15 (1978) for which they are liable in tort under the New Mexico Tort Claims Act, N.M. Stat. Ann. §§ 41-4-1 through 41-4-27 (2008);

3.      Defendants Moore and Warren ignored the fact that Plaintiff had a DSM-IV illness listed in his mental health file and denied him placement in an Alternative Placement Area in violation of his rights under the Eighth and Fourteenth Amendments to the U.S. Constitution;

4.      Defendants Ulibarri, Perry, Prescott and Bustos changed an NMCD behavioral program contract policy in a way that prevented Plaintiff from using the policy in violation of his rights under the Eighth and Fourteenth Amendments to the U.S. Constitution, and the policy is unconstitutional on its face under the Eighth Amendment;

5.      Defendant LeMaster wrote and signed NMCD Policy PNM-032401 which subjects maximum security prisoners to submit to visual anal examinations when going from one secure area of the prison to another and Plaintiff was subjected to this policy in violation of his rights under the Fourth Amendment to the U.S. Constitution;

6.      Defendants Tafoya, Shanks, Ulibarri, Prescott and Casaus suspended Plaintiff's visits with his wife for a total of four years and six months, without giving him notice of the suspension or a time limit on how long the suspension would last, in violation of his rights under the First and Eighth Amendments to the U.S. Constitution and the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution;

7.      Defendants Mares, Ulibarri, Prescott and Shanks denied Plaintiff money orders from his wife in violation of his rights under the Fourteenth Amendment to the U.S. Constitution; and

8.      Defendants Perry, Bustos, Ulibarri, Prescott, Shanks and LeMaster wrote, edited, signed and enforced an NMCD policy against Plaintiff that subjected him to sixteen consecutive months of disciplinary segregation which constituted cruel and unusual punishment and violated his rights under the Eighth and Fourteenth Amendments to the U.S. Constitution.

It is further recommended that as to all other matters, ***Defendants' Motion to Dismiss*** (*Doc. 262*) be **DENIED**, and Plaintiff be allowed to proceed in this matter as to the following, remaining claims: (a) Defendants Perry, Williams, Bustos and Prescott wrote, edited, signed and enforced NMCD policies against Plaintiff that denied him the right to possess religious and legal books, magazines and newspapers, and restricted his possession of letters, in violation of his rights under the First Amendment to the U.S. Constitution; (b) Defendants Perry, Prescott and Bustos wrote, edited, signed and enforced NMCD policies against Plaintiff which caused him to be denied recreation for one-hundred and twenty consecutive days in violation of his right to be free from cruel and unusual punishment under the Eighth Amendment to the U.S. Constitution; and (c) Defendants Tafoya, Shanks, Ulibarri, Prescott and Casaus suspended Plaintiff's visits with his wife for a total of four years and six months, without giving him notice of the suspension or a time limit on how

long the suspension would last, in violation of his rights under the Due Process Clause of the

Fourteenth Amendment to the U.S. Constitution.

Additionally, it is recommended that Plaintiff's ***Motion for Leave to Amend Complaint***

(*Doc. 289*) be **DENIED**.


_____
**HONORABLE LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**