IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WILLIAM MCGHEE,

        Plaintiff,

v.                                    CIV-04-0239 MV/LAM

JOE WILLIAMS, et al.,

        Defendants.

## ORDER SETTING EVIDENTIARY HEARING AND GRANTING PLAINTIFF'S *MOTION TO AMEND Doc. 298 (Doc. 301)*

**THIS MATTER** is before the Court *sua sponte* after a review of the record and on Plaintiff's *Motion to Amend Doc. 298*[1] *(Doc. 301)*. In response to the Court's *Order for Supplemental Briefing* (*Doc. 294*), Defendants filed *Defendants' Motion for Summary Judgment (Doc. 295)* and Plaintiff filed his *Motion for Partial Summary Judgment (Doc. 296)*. Plaintiff responded to Defendants' motion with his *Response to Defendants['] Motion for Summary Judgment (Doc. 304)*. Defendants failed to respond to Plaintiff's *Motion for Partial Summary Judgment (Doc. 296)* which, pursuant to D. N.M. LR-Civ. 7.1(b), constitutes consent for the Court to grant the motion. Having considered the parties' submissions, the record in this case, and relevant law, the Court **FINDS** that Plaintiff's *Motion to Amend Doc. 298 (Doc. 301)* is well-taken and should be **GRANTED**. In addition, the Court is unable to resolve the parties' motions for summary judgment on the pleadings and an evidentiary hearing shall be held on Plaintiff's remaining claims.

On July 8, 2009, the Court adopted the undersigned's *Proposed Findings and Recommended Disposition (Doc. 290)* and dismissed all but three of Plaintiff's claims with

---

[1] *Document 298* is Plaintiff's *Memorandum of Law in Support of Plaintiff['], Motion for Partial Summary Judgment*, filed August 24, 2009.

prejudice. *See **Order Adopting Magistrate Judge's Proposed Findings and Recommended Disposition** (Doc. 293).* Plaintiff's remaining claims are: (1) that Defendants Perry, Williams, Bustos and Prescott wrote, edited, signed and enforced New Mexico Corrections Department (hereinafter "NMCD") policies against Plaintiff that denied him the right to possess religious and legal books, magazines and newspapers, and restricted his possession of letters, in violation of his rights under the First Amendment to the United States Constitution; (2) that Defendants Perry, Prescott and Bustos wrote, edited, signed and enforced NMCD policies against Plaintiff which caused him to be denied recreation for 120 consecutive days in violation of his right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution; and (3) that Defendants Tafoya, Shanks, Ulibarri, Prescott and Casaus suspended Plaintiff's visits with his wife for a total of four years and six months, without giving him notice of the suspension or a time limit on how long the suspension would last, in violation of his rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Id.* at 3. On July 23, 2009, the Court ordered supplemental briefing on Plaintiff's remaining claims, setting forth explicit directions regarding the information and analysis the Court needed to decide these claims and ordering the parties to submit supporting documentation and sworn affidavits to support their dispositive motions even if they had previously submitted that information in this case. *See **Order for Supplemental Briefing** (Doc. 294)* at 2-4. In response to this order, both parties filed motions for summary judgment.

### *1. Defendants' Motion for Summary Judgment*

Defendants failed to comply with any of the Court's instructions in its ***Order for Supplemental Briefing** (Doc. 294)*. In an appallingly deficient motion, Defendants simply state the summary judgment standard, and then provide *no* undisputed facts and completely fail to argue why

they are entitled to judgment as a matter of law on Plaintiff's three remaining claims. *See Defendants' Motion for Summary Judgment (Doc. 295)* at 2-8. Inexplicably, Defendants restate arguments they made in *Defendants' Supplemental Brief (Doc. 281)* that Plaintiff fails to state a claim under the due process and equal protection clauses, that Defendants are entitled to sovereign immunity, and that Plaintiff failed to comply with the New Mexico Tort Claims Act (*Defendants' Motion for Summary Judgment (Doc. 295)* at 3-8), when all of these issues were ruled on in the Court's *Proposed Findings and Recommended Disposition (Doc. 290)* at 11-13, 16-18, which was adopted by the Honorable Martha Vázquez, Chief United States District Judge in her *Order Adopting Magistrate Judge's Proposed Findings and Recommended Disposition (Doc. 293)*. The only argument made by Defendants in their motion for summary judgment that is in any way relevant to Plaintiff's remaining issues is that they are entitled to qualified immunity for Plaintiff's claim that his First Amendment rights were violated. *Defendants' Motion for Summary Judgment (Doc. 295)* at 6-8. However, Defendants simply state the legal standard for qualified immunity and fail to present any facts or reasons why it applies in this case. Because of Defendants' inadequate motion, the Court has insufficient evidence upon which to decide whether Defendants are entitled to qualified immunity.

### 2. Plaintiff's Motion to Amend Document 298 (Doc. 301)

Plaintiff's *Motion for Partial Summary Judgment (Doc. 296)* asks the Court to grant him summary judgment on his three remaining claims. In support of his motion, Plaintiff filed a *Declaration in Support of Motion for Partial Summary Judgment (Doc. 297)*, and *Memorandum of Law in Support of Plaintiff[']s Motion for Partial Summary Judgment (Doc. 298)*. In Plaintiff's *Motion to Amend Doc. 298 (Doc. 301)*, Plaintiff asks the Court to allow him to provide four pages of additional support for his three remaining claims, which are submitted as part of his

*Amended Memorandum of Law in Support of Plaintiff[']s Motion for Partial Summary Judgment (Doc. 296) (Doc. 302)* (hereinafter, "***Plaintiff's Amended Memorandum of Law***").  Defendants failed to respond to either of Plaintiff's motions, which constitutes consent to grant them.  *See* D. N.M. LR-Civ. 7.1(b).  The Court finds that the additional information provided in ***Plaintiff's Amended Memorandum of Law*** *(Doc. 302)* is relevant to Plaintiff's remaining claims and, therefore, the Court finds that Plaintiff's ***Motion to Amend Doc. 298*** *(Doc. 301)* should be granted.

### 3.  *Plaintiff's Motion for Summary Judgment*

#### A.  *Plaintiff's First Amendment Claim*

Plaintiff's claim that Defendants Perry, Williams, Bustos and Prescott wrote, edited, signed and enforced NMCD policies against Plaintiff that denied him the right to possess religious and legal books, magazines and newspapers, and restricted his possession of letters, in violation of his rights under the First Amendment to the United States Constitution, requires the Court to determine whether the policies are "reasonably related to legitimate penological interests."  *Beard v. Banks*, 548 U.S. 521, 528 (2006) (citation and internal quotation marks omitted).  To make this determination, the Court must consider: (1) whether there is "a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;" (2) whether there are "alternative means of exercising the right that remain open to prison inmates;" (3) what impact accommodation of the right will have on guards, inmates and prison resources; and (4) whether "ready alternatives" are available for furthering the governmental interest.  *Id.* at 529 (citing *Turner v. Safley*, 482 U.S. 78, 89-90 (1987)).  The burden is on Plaintiff to disprove the validity of the NMCD policies.  *See Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

Plaintiff's allegations relating to his First Amendment claim can be found in his ***Amended Civil Complaint*** *(Doc. 253)* at 9-12, wherein Plaintiff refers to exhibits attached to his ***Civil***

*Complaint (Doc. 1).* Although Plaintiff states in his *Amended Civil Complaint (Doc. 253)* at 9-12 that he "requested [his] legal books, religious books, and self-help books . . . , and [he] was denied," his inmate grievances attached to his *Civil Complaint (Doc. 1)* actually show that Plaintiff was allowed three personal books at a time, although he requested to have twelve or as many as would fit in his foot locker. *Civil Complaint (Doc. 1)* at Exhibit B-2. Plaintiff also filed a grievance stating that he required more than one religious book at a time because his religion requires him to read several religious books (*id.* at Exhibit C-2); however, in response, Defendants stated that "under the New Level System that has been implemented[,] you're allowed one religious book at a time according to the Table of Services for your custody level." *Id.* at Exhibit C-1. Plaintiff also grieved the denial of his request to purchase "Ebony" and "Jet" magazines (*id.* at Exhibit D-2) and the Albuquerque Journal (*id.* at Exhibit E-2) stating that each denial was a violation of his First Amendment rights; however, in response, Defendants stated that those items are restricted "under CD Policy 143000" (*id.* at Exhibit D-1, E-1). In addition, Plaintiff requested to have as many letters as fit in his storage locker (*id.* at Exhibit H-2), but Defendants denied this request stating that "CD Policy 143002 B," which is the NMCD policy governing letters, is constitutional (*id.* at H-1). Plaintiff does not provide any grievance regarding any request for legal books. Plaintiff attached a copy of the Level VI Table of Services (143002.B) to his *Civil Complaint (Doc. 1)* at Exhibit I. Pursuant to that Table, depending on which "Step" an inmate has reached, and depending on the length of time an inmate is in Level VI, the number of letters, personal books, and magazines an inmate is allowed increases. *Id.* at Exhibit I-1 to I-4. The Table also states that inmates are allowed two religious books at each "Step." *Id.* at I-3. This Table, however, does not provide the Court with the NMCD policy setting forth the amount of property an inmate is allowed at the various "Steps." The Court, therefore, will require Defendants to provide to the Court and to Plaintiff a copy of the

NMCD policy or policies that were in effect at the time of Plaintiff's grievances related to his First Amendment claims, which can be found in Plaintiff's *Civil Complaint (Doc. 1)* at Exhibits B, C, D, E, and H.  Specifically, Defendants are required to provide: (1) the NMCD policies relating to the Level VI Table of Services (143002.B); (2) NMCD Policy 143000 and 143002 B (if different than the Level VI Table of Services (143002.B)); and (3) any other Tables of Services that were in effect at the time of Plaintiff's grievances.  The Court will also require Plaintiff to provide to the Court and to Defendants copies of additional policies, if any, that he claims violated his First Amendment rights.

While Defendants made a general statement in *Defendants' Motion for Summary Judgment (Doc. 295)* at 5-6 that "[a]llowing inmates unrestrained access to property poses health, safety and security risks, including the risk of fire, inadequate access to emergency egress, the increased risk of disease and the increased violence associated with disputes over property," and that "[l]imitations on inmate property are critical in maintaining the safety, as well as the security of the institution," this statement does not provide the Court with sufficient information to determine whether there is a rational connection between the prison regulation and the governmental interest put forward to justify it.  Specifically, Defendants fail to explain: (1) why the number of personal books inmates are allowed increases as the inmates move up the "Steps" in the Level VI Table of Services (143002.B), but the number of religious books stays the same; (2) why Plaintiff was limited to only one religious book when the Table of Services provided by Plaintiff states he should have been allowed two; (3) why Plaintiff was not allowed more than five letters, the two magazines he requested, or the Albuquerque Journal, especially when inmates at Step 4 are allowed 16 letters, 5 books, and 6 magazines; and (4) the reasons behind the increased number of materials inmates are allowed as the length of time they are in Level VI increases, and how inmates are able to move to

the various steps in the Level VI Table of Services. Defendants, therefore, fail to specify which governmental interests are served by restricting Plaintiff's possession of books, magazines and newspapers, and the Court will set an evidentiary hearing to determine the reasonableness of the policies under the four-part *Turner v. Safley* test.

### *B. Plaintiff's Eighth Amendment Claim*

Plaintiff next asks for summary judgment on his claim that Defendants Perry, Williams, Bustos and Prescott wrote, edited, signed and enforced NMCD policies against Plaintiff that denied him recreation for 120 consecutive days in violation of his right to be free from cruel and unusual punishment under the Eighth Amendment, and in support of his motion for summary judgment, he refers to exhibits attached to other documents filed in this case. *See Amended Memorandum of Law (Doc. 302)* at 2-3, 4-5, 18-20; *see also Amended Civil Complaint (Doc. 253)* at 12-14. These exhibits show that on January 18, 2001, the NMCD's hearing officer apparently entered two Disciplinary Decisions recommending that Plaintiff lose recreation privileges for sixty days for each decision based on infractions occurring on January 7, 2001 and January 8, 2001, respectively. *See Notice and Motion for Leave to File Amended and Supplemental Complaint (Doc. 174)* at Exhibits PD-4 at page 75 and PD-7 at page 78. In addition, in his *Amended Memorandum of Law (Doc. 302)*, Plaintiff cites to the NMCD policy regarding loss of privileges, which shows that on July 14, 2003, NMCD revised its Policy CD-090101 to state that "**Recreation can only be forfeited in increments of two days per week, not to exceed two days per week**." *See Amended Memorandum of Law (Doc. 302)* at 19 (citing to *Martinez Report and Motion for Summary Judgment (Doc. 101)* at Exhibit D 01428 (policy as of July 15, 2002) and *Document 101* at Exhibit D 01461 (policy as of July 14, 2003)).

To establish a claim for denial of his Eighth Amendment rights, Plaintiff has to demonstrate that he was completely denied exercise for an extended period of time. *Housley v. Dodson*, 41 F.3d 597, 599 (10th Cir. 1994) (holding that "total denial of exercise for an extended period of time would constitute cruel and unusual punishment prohibited by the Eighth Amendment"). In addition, the Court must consider the circumstances surrounding the denial of Plaintiff's recreation. *Id.* (explaining that courts must consider "the physical characteristics of the cell and jail and the average length of stay of the inmates" in making an Eighth Amendment violation claim for denial of exercise). The Disciplinary Decisions do not establish that Plaintiff was necessarily denied *all exercise* for the 120 days, nor do they provide any information to the Court regarding the circumstances surrounding the decision to forfeit Plaintiff's recreation. In addition, the language added to Policy CD-090101 in July 2003 does not establish whether Plaintiff was denied exercise and for how long and does not establish what the practice of NMCD was regarding recreation and exercise prior to the added language. Therefore, the exhibits and documents cited by Plaintiff do not provide the Court with enough information to decide whether Plaintiff's Eighth Amendment rights were violated, and the Court will set an evidentiary hearing for this claim.

### C.  *Plaintiff's Due Process Claim*

For the Court to determine whether Plaintiff has proven that he has a constitutionally protected state-created liberty interest in spousal visitation and whether he was deprived of that interest without the procedural safeguards afforded by the Due Process clause of the Fourteenth Amendment, the Court needs to determine: (1) whether Plaintiff's visitation with his spouse was indefinitely suspended so that it constitutes a state-created liberty pursuant to the holding in *Cordova v. LeMaster*, 2004-NMSC-026, ¶¶ 17-23, 136 N.M. 217, 96 P.2d 778 (holding that the indefinite suspension of spousal visitation is an atypical and significant hardship and, therefore, constitutes a

state-created liberty interest); (2) if so, whether the creation of the state-created liberty interest in spousal visitation in *Cordova* applies retroactively to the time period Plaintiff alleges denial of spousal visitation; and (3) if (1) and (2) are proven, whether Plaintiff was denied adequate due process, which would include notice of the charge resulting in the suspension of visits; an opportunity to be heard on the charges, to present evidence and to rebut the evidence against him; and a written statement by an impartial factfinder as to the evidence relied on and the reasons for the disciplinary action, including the length of time chosen for the discipline (*see Cordova*, 96 P.3d at 785-86 (citation omitted)). Plaintiff cites to a letter that was sent to his wife from the Deputy Secretary of Operations, which states that her visiting privileges would not be returned at that time, and that she may submit a new request for reinstatement of visiting privileges in six months. *See* **Amended Memorandum of Law** *(Doc. 302)* at 3 (citing **Notice and Motion for Leave to File Amended and Supplemental Complaint** *(Doc. 174)* at Exhibit SV-1, page 118). Neither this document nor the other exhibits cited by Plaintiff provide sufficient evidence for the Court to determine whether Plaintiff's visits were indefinitely suspended, that the holding in *Cordova* applies retroactively, or that Plaintiff was denied adequate due process. The Court will, therefore, set an evidentiary hearing on this claim.

## Conclusion

Because the Court is unable to resolve Plaintiff's remaining three claims on the pleadings, the Court will set an evidentiary hearing to allow the parties to present evidence on these claims.

**IT IS THEREFORE ORDERED** that:

1. Plaintiff's ***Motion to Amend Doc. 298*** *(Doc. 301)* is **GRANTED**;

2. An evidentiary hearing will be held on **January 27, 2010 at 9:30 a.m.** at the Federal Courthouse at 200 E. Griggs, Las Cruces, New Mexico;

3. Defendants provide to the Court ***no later than December 28, 2009*** a motion for an order for a *Writ of Habeas Corpus Ad Testificandum*, and a proposed *Writ of Habeas Corpus Ad Testificandum*, authorizing the New Mexico Corrections Department to surrender the prisoner, William McGhee, to the United States Marshall or his Deputy for transport in order that he may appear before the Honorable Lourdes A. Martínez, United States Magistrate Judge, to testify on his behalf in the above-captioned case on January 27, 2010 at 9:30 a.m.;

4. Defendants provide to the Court and to Plaintiff ***no later than January 4, 2010*** a copy of the NMCD policy or policies that were in effect at the time of Plaintiff's grievances related to his First Amendment claims, which can be found in Plaintiff's ***Civil Complaint*** *(Doc. 1)* at Exhibits B, C, D, E, and H, specifically:

   A. The NMCD policies relating to the Level VI Table of Services (143002.B);

   B. NMCD Policy 143000 and 143002 B (if different than the Level VI Table of Services (143002.B)); and

   C. Any other Tables of Services that were in effect at the time of Plaintiff's grievances;

5. Plaintiff provide to the Court and to Defendants ***no later than January 4, 2010*** copies of additional NMCD policies, if any, that he claims violated his First Amendment rights (***the Court instructs Plaintiff not to provide references to the record - the Court requires actual copies of the policies***);

6. Defendants provide to the Court and to Plaintiff documentation, if any, of governmental interests that may justify the NMCD policy (including the Level VI Table of Services (143002.B)) that Plaintiff identifies as having violated his First Amendment rights, ***no later than January 8, 2010***;

7. Plaintiff and Defendants be prepared to discuss the following at the evidentiary hearing;

A. The four factors of the reasonableness test articulated in *Turner v. Safley*, 482 U.S. 78, 93 (1987), in relation to the NMCD policy identified by Plaintiff and the governmental interests set forth to justify them;

B. The circumstances surrounding Plaintiff's denial of recreation in light of the Eighth Amendment analysis set forth in *Housley v. Dodson*, 41 F.3d 597, 599 (10th Cir. 1994); and

C. The circumstances surrounding Plaintiff's denial of spousal visitation, specifically whether the denial was for an indefinite period and what due process, as described herein, Plaintiff was given regarding the charge leading to the denial of spousal visitation.

**IT IS SO ORDERED.**

*Lourdes A. Martinez*
**HONORABLE LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**