IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WILLIAM MCGHEE,

        Plaintiff,

v.                                **CIV-04-0239 MV/LAM**

JOE WILLIAMS, et al.,

        Defendants.

# PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

## PROPOSED FINDINGS

**THIS MATTER** is before the Court on *Defendants' Motion for Summary Judgment (Doc. 295)* and Plaintiff's *Motion for Partial Summary Judgment (Doc. 296)*, filed in response to the Court's *Order for Supplemental Briefing (Doc. 294)*.  Also before the Court are Plaintiff's: (1) *Declaration in Support of Motion for Partial Summary Judgment (Doc. 297)* (hereinafter "*Plaintiff's Declaration*"); (2) *Memorandum of Law in Support of Plaintiff[']s Motion for Partial Summary Judgment (Doc. 298)* (hereinafter "*Plaintiff's Memorandum of Law*"); (3) *Amended Memorandum of Law in Support of Plaintiff[']s Motion for Partial Summary Judgment (Doc. 296) (Doc. 302)* (hereinafter "*Plaintiff's Amended Memorandum of Law*"); and (4) *Response*

---

[1]**Within fourteen (14) days after a party is served with a copy of these Proposed Findings and Recommended Disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1)(C), file written objections to such Proposed Findings and Recommended Disposition.  A party must file any objections with the Clerk of the United States District Court for the District of New Mexico within the ten (10) day period allowed if that party wants to have appellate review of the Proposed Findings and Recommended Disposition.  If no objections are filed, no appellate review will be allowed.  Pursuant to Fed. R. Civ. P. 72(b)(2), a party may respond to another party's objections within fourteen (14) days after being served with a copy of the objections.**

*to Defendants[']  Motion for Summary Judgment* (*Doc. 304*) (hereinafter "***Plaintiff's Response***").[2]

On January 27, 2010, the Court held an evidentiary hearing on Plaintiff's and Defendants' motions

for summary judgment, at which Plaintiff and counsel for Defendants were present.  Having

reviewed the motions and related documents, the record in this case, relevant law, and the testimony

given at the evidentiary hearing, the Court recommends that ***Defendants' Motion for Summary***

***Judgment (Doc. 295)*** be **GRANTED in part and DENIED in part** and Plaintiff's ***Motion for***

***Partial Summary Judgment (Doc. 296)*** be **GRANTED in part and DENIED in part** as set forth

below.

## Background

Plaintiff is an inmate proceeding *pro se* and *in forma pauperis*, and is incarcerated at the

Central New Mexico Correctional Facility.  Plaintiff originally filed this action on March 1, 2004.

*See **Preliminary Statement (Doc. 1)*** (hereinafter "***Complaint***").  On October 17, 2005, after

numerous motions regarding service[3] and other issues, the Court ordered Defendants to file a

*Martinez* report pursuant to *Martinez v. Aaron*, 570 F.2d 317, 319-320 (10th Cir. 1978), which

explains that courts may order defendants to investigate the incident or incidents underlying lawsuits

filed against them and submit a report of their investigation in order to develop a factual or a legal

basis for determining whether the plaintiffs state a meritorious claim.  *See **Order to File a Martinez***

***Report (Doc. 84)***.  The Court explained that the *Martinez* report may be used for summary judgment

---

[2]The Court notes that Defendants failed to file a response to Plaintiff's ***Motion for Partial Summary Judgment***
*(Doc. 296)*, which constitutes consent to grant the motion pursuant to D. N.M. LR-Civ. 7.1(b).  However, summary
judgment is not a proper remedy merely because a party fails to file a response.  *Reed v. Benett*, 312 F.3d 1190, 1194
(10th Cir. 2002).  Instead, the moving party must first meet its initial burden of demonstrating that no genuine issue of
material fact exists and that it is entitled to summary judgment as a matter of law.  *Id.*

[3]*See **Proposed Findings and Recommended Disposition (Doc. 183)*** at 5 n.5 for a chronology of the delays,
attributable to both Plaintiff and Defendants, in obtaining addresses for service on certain Defendants.

purposes, and provided Plaintiff an opportunity to present conflicting evidence to controvert the facts set forth in the *Martinez* report.  *Id.* at 4.  The Court asked Defendants to present in the *Martinez* report the facts needed to resolve Plaintiff's claims, including: (1) the names of persons with knowledge of Plaintiff's claims; (2) records (including policies) which pertain to Plaintiff's claims; (3) affidavits which support the facts set forth in the *Martinez* report; and (4) copies of administrative grievance procedures relating to Plaintiff's claims.  *Id.*  Defendants submitted their **Martinez Report** *(Doc. 101)* on November 29, 2005, and filed supplements to the report on: November 29, 2005 *(Doc. 103)*; December 5, 2005 *(Doc. 108)*; December 6, 2005 *(Doc. 110)*; March 9, 2006 *(Doc. 133*, Exhibit 2*)*; and May 8, 2006 *(Doc. 153)*.  Plaintiff filed responses to the *Martinez* Report on: February 2, 2006 *(Doc. 127)*; February 9, 2006 *(Doc. 129)*; May 1, 2006 *(Doc. 152)*; and June 26, 2006 *(Doc. 162)*.  Defendants filed a reply to the *Martinez* Report on February 21, 2006 *(Doc. 131)*.

This Court has entered five Proposed Findings and Recommended Dispositions (hereinafter "PF&RD") in this case.  On September 26, 2006, in the first PF&RD, the Court recommended *sua sponte* dismissal of Plaintiff's claims against Defendant Bustos for changing a form related to inmates' requests and against Defendants Sedillo, LeMaster and Shanks for denying Plaintiff's prison grievances.  **PF&RD** *(Doc. 183)* at 10 (adopted by the Honorable Martha Vázquez, Chief United States District Judge, on November 14, 2006 *(Doc. 210)*).

The second PF&RD, filed August 23, 2007, recommended, *inter alia*, dismissing *sua sponte* Plaintiff's claims under 42 U.S.C. § 1983 for monetary relief against Defendants Williams, Bustos and Prescott in their official capacities, and recommended denying **Defendants' Motion for Summary Judgment or Dismissal** (originally filed as *Document 38* and renewed as *Document 218*) and **Amended Defendants' Motion for Summary Judgment or Dismissal** (originally filed as

*Document 89* and renewed as *Document 220*) on the basis of res judicata and collateral estoppel based on a previous settlement agreement and previous habeas corpus cases, and denying ***Defendant John Shanks' Motion for Summary Judgment or Dismissal*** (originally filed as *Document 87* and renewed as *Document 219*) on the basis of mootness. ***PF&RD (Doc. 242)*** at 5-7, 12-16 (adopted by the Honorable Martha Vázquez, Chief United States District Judge, on September 29, 2007 *(Doc. 244)*).

The third PF&RD, filed August 31, 2007, recommended: (1) granting Defendants' ***Martinez Report and Motion for Summary Judgment*** (originally filed as *Document 101* and renewed as *Document 221*) on Plaintiff's 42 U.S.C. § 1983 claims for declaratory and injunctive relief against Defendants Williams, Bustos and Prescott; (2) granting the motion on Plaintiff's equal protection claims under the Fourteenth Amendment against Defendants Williams, Bustos, Prescott and Perry; (3) denying the motion on Plaintiff's claims for prospective injunctive relief and declaratory relief ancillary to said prospective relief against Defendants Williams, Bustos and Prescott; (4) denying as moot Plaintiff's claims for monetary relief against Defendants Williams, Bustos and Prescott in their official capacities; and (5) denying the motion on Plaintiff's claims under the First Amendment and for due process violations under the Fourteenth Amendment against Defendants Williams, Bustos, Prescott and Perry. ***PF&RD (Doc. 243)*** at 18 (adopted by the Honorable Martha Vázquez, Chief United States District Judge, on September 29, 2007 *(Doc. 245)*).

The fourth PF&RD, filed October 30, 2007, recommended allowing Plaintiff to file an amended complaint. ***PF&RD (Doc. 246)*** at 7 (adopted by the Honorable Martha Vázquez, Chief United States District Judge, on March 31, 2008 *(Doc. 251)*). Plaintiff then filed his ***Amended Civil Complaint (Doc. 253)*** (hereinafter "***Amended Complaint***") on April 29, 2008. On June 1, 2009, the Court entered its fifth PF&RD in this case which recommended granting ***Defendants' Motion to***

4

*Dismiss (Doc. 262)* with regard to several of Plaintiff's claims raised in his *Amended Complaint*

*(Doc. 290)*, and recommended denying the motion as to three of Plaintiff's claims, specifically:

(1) that Defendants Perry, Williams, Bustos and Prescott wrote, edited, signed and enforced New

Mexico Corrections Department (hereinafter "NMCD") policies against Plaintiff that denied him

the right to possess religious, personal and legal books, magazines and newspapers, and restricted

his possession of letters, in violation of his rights under the First Amendment to the United States

Constitution; (2) that Defendants Perry, Prescott and Bustos wrote, edited, signed and enforced

NMCD policies against Plaintiff which caused him to be denied recreation for 120 consecutive days

in violation of his right to be free from cruel and unusual punishment under the Eighth Amendment

to the United States Constitution; and (3) that Defendants Tafoya, Shanks, Ulibarri, Prescott and

Casaus suspended Plaintiff's visits with his wife for a total of four years and six months, without

giving him notice of the suspension or a time limit on how long the suspension would last, which

was a violation of his constitutionally protected state-created liberty interest in spousal visitation

under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

*PF&RD (Doc. 290)* at 42-44 (adopted by the Honorable Martha Vázquez, Chief United States

District Judge, on July 8, 2009 *(Doc. 293)*).

On July 23, 2009, the Court ordered supplemental briefing on Plaintiff's remaining claims,

setting forth explicit directions regarding, and describing in great detail, the information and analysis

the Court needed to decide these claims and ordered the parties to submit supporting documentation

and sworn affidavits to support their dispositive motions even if they had previously submitted that

information in this case. *See Order for Supplemental Briefing (Doc. 294)* at 2-4. In response to

this order, both parties filed the currently pending motions for summary judgment. *See Defendants'*

*Motion for Summary Judgment (Doc. 295)* and Plaintiff's *Motion for Partial Summary Judgment*

*(Doc. 296)*.  Despite the Court's instructions, in their motion for summary judgment Defendants failed to provide <u>any</u> undisputed facts and failed to argue why they are entitled to judgment as a matter of law on Plaintiff's three remaining claims.  *See **Defendants' Motion for Summary Judgment** (Doc. 295)* at 2:

> "<u>III. UNDISPUTED FACTS:</u>
>  1.
>
> <u>IV. CLAIMS</u>"

Instead, Defendants restated prior arguments which the Court had already ruled against the parties on, such as, that Plaintiff has failed to state a claim under the due process and equal protection clauses, that Defendants are entitled to sovereign immunity, and that Plaintiff failed to comply with the New Mexico Tort Claims Act.  *See **Defendants' Motion for Summary Judgment** (Doc. 295)* at 3-8 (these claims were dismissed in the Court's fifth ***PF&RD** (Doc. 290)* at 11-13, 16-18, respectively, which was adopted by the Honorable Martha Vázquez, Chief United States District Judge *(Doc. 293)*).  While Plaintiff presented a statement of undisputed facts in his ***Amended Memorandum of Law** (Doc. 302)* at 1-4, the Court was unable to decide Plaintiffs' remaining three claims based on the information submitted by the parties.  Therefore, the Court set an evidentiary hearing and, again, set forth specific instructions on what information and supporting documentation the Court needed to decide the remaining claims.  *See **Order Setting Evidentiary Hearing** (Doc. 307)* at 9 (explaining that "[b]ecause the Court is unable to resolve Plaintiff's remaining three claims on the pleadings, the Court will set an evidentiary hearing to allow the parties to present <u>evidence</u> on these claims") (emphasis added).

Despite the Court's instructions, counsel for Defendants appeared at the evidentiary hearing without any witnesses and only one exhibit (a chart summarizing Plaintiff's discipline history), and was unable to refer to the hundreds of pages of documents she had filed with the Court because her

copies of the documents were not numbered sequentially.[4]  Plaintiff testified at the hearing, which provided the Court with sworn testimony regarding the facts of this case.  *See Transcript* at 7-78. Despite these deficiencies, the Court agreed to allow Defendants a final limited opportunity to submit a supplemental brief regarding the policies relevant to Plaintiff's remaining three claims, and allowed Plaintiff an opportunity to respond to Defendants' supplemental brief.  *See Order Setting Deadline for Defendants to Submit Supplemental Briefing on Plaintiff's Remaining Claims (Doc. 313).*  On February 1, 2010, Defendants submitted *Defendants' Supplemental Brief (Doc. 316)*, consisting of 143 pages, which was hand-delivered to Plaintiff on February 1, 2010.  *See Return of Service (Doc. 317).*  Plaintiff has not filed a response to the supplemental brief as of the date this PF&RD was entered.

### Remaining Claims and Parties

The following claims are the remaining claims in this case: (1) that Plaintiff was denied the right to possess religious, personal and legal books, magazines and newspapers, and was restricted in his possession of letters, in violation of his rights under the First Amendment to the United States Constitution (*Amended Complaint (Doc. 253)* at 9-12, referring to exhibits attached to Plaintiff's *Civil Complaint (Doc. 1)*); (2) that Plaintiff was be denied recreation for 120 consecutive days in violation of his right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution (*Amended Complaint (Doc. 253)* at 12-14 and *Amended Memorandum of Law (Doc. 302)* at 2-3, 4-5, 18-20); and (3) that Plaintiff's visits with his wife were suspended for a total of four years and six months, without giving him notice of the suspension

---

[4]Despite the title of the *Order Setting Evidentiary Hearing (Doc. 307)* and the Court's explanation therein that the purpose of the hearing was for the parties to present evidence on Plaintiff's remaining claims, counsel for Defendants stated that she thought that it was an oral argument hearing to discuss *Defendants' Motion for Summary Judgment (Doc. 295)* and did not come prepared to present any evidence.  *See Transcript of January 27, 2010 Evidentiary Hearing (Doc. 318)* (hereinafter "*Transcript*") at 80, 82-83.

or a time limit on how long the suspension would last, which was a violation of his constitutionally protected state-created liberty interest in spousal visitation under the Due Process Clause of the Fourteenth Amendment to the United States Constitution (*Amended Civil Complaint (Doc. 253)* at 21-25). Plaintiff states that he "concedes to dismissal of defendant Prescott as a defendant." *Response to Defendants' Motion for Summary Judgment* (*Doc. 304*) at 2, *see also* **Transcript** *(Doc. 318)* at 3. The Court, therefore, recommends dismissal of Plaintiff's claims against Defendant Prescott. The Court will consider the remaining claims as set forth below. Because Plaintiff is a *pro se* litigant, the Court construes his amended complaint liberally and holds it to a less stringent standard than a formal pleading drafted by a lawyer. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citation omitted).

### *Legal Standard for Summary Judgment*

A court may grant summary judgment if a moving party demonstrates that "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998). Once this initial burden is met, the burden shifts to the nonmoving party to present specific, admissible facts from which a rational trier of fact could find for the nonmoving party. *Id.* at 671. The nonmoving party may not rest on his pleadings, but must set forth specific facts showing there is a genuine issue for trial. *See Applied Genetics Int'l., Inc. v. First Affiliated Securities, Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990); *see also*

Fed. R. Civ. P. 56(e).  "[W]here the non[-]moving party will bear the burden of proof at trial on a dispositive issue, that party must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment."  *McKnight v. Kimberly Clark Corp.*, 149 F. 3d 1125, 1128 (10th Cir. 1998) (citation and quotation marks omitted).

Supporting and opposing affidavits must be made on personal knowledge, set forth facts that would be admissible in evidence, and show that the affiant is competent to testify to the matters stated in the affidavit.  *See* Fed. R. Civ. P. 56(e)(1).  Copies of documents, or parts of documents, referred to in an affidavit must be sworn to or certified and either attached to, or served with, the affidavit.  *Id.*  Only statements made with actual knowledge will support a motion for summary judgment and a court must disregard statements of mere belief.  *See Tavery v. United States*, 32 F.3d 1423, 1427 n.4 (10th Cir. 1994).  In considering a motion for summary judgment, a court assumes the evidence of the nonmoving party to be true and draws all justifiable inferences in the nonmoving party's favor.  See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255.  The essential inquiry on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251-52.

### *First Amendment Claim*

Plaintiff's claim that he was denied the right to possess religious, personal and legal books, magazines and newspapers, and restricted his possession of letters, in violation of his rights under the First Amendment to the United States Constitution, requires the Court to determine whether the NMCD policies are "reasonably related to legitimate penological interests."  *Beard v. Banks*, 548 U.S. 521, 528 (2006) (citation and quotation marks omitted).  To make this determination, the

Court must consider: (1) whether there is "a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;" (2) whether there are "alternative means of exercising the right that remain open to prison inmates;" (3) what impact accommodation of the asserted constitutional right will have on guards, inmates and prison resources; and (4) whether "ready alternatives" are available for accommodating the claimant's constitutional complaint while still furthering the governmental interest. *Id.* at 529 (citing *Turner v. Safley*, 482 U.S. 78, 89-90 (1987)). The burden is on Plaintiff to disprove the validity of the NMCD policies. *See Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

Defendants argue for the first time in ***Defendants' Motion for Summary Judgment (Doc. 295)*** at 6-8 and ***Defendants' Supplemental Brief (Doc. 316)*** at 4-13 that they are entitled to qualified immunity on Plaintiff's claim that his First Amendment rights were violated. When a defendant invokes the defense of qualified immunity, the plaintiff, to avoid dismissal of his claims, must make a showing that (1) the defendant's actions violated a constitutional or statutory right and (2) the right was clearly established at the time of the defendant's unlawful conduct. *See Serna v. Colo. Dep't of Corrections*, 455 F.3d 1146, 1150 (10th Cir. 2006).

Plaintiff claims violation of his First Amendment rights based on NMCD policies that resulted in Plaintiff being denied possession of his legal, religious and personal books, and magazines and newspapers, and Plaintiff being limited to possession of no more than three letters at a time. ***Amended Complaint (Doc. 253)*** at 9-11. As part of this claim, Plaintiff refers to the exhibits in his ***Complaint (Doc. 1)***, which are his inmate grievances regarding these materials. *Id.* Plaintiff filed an inmate grievance regarding his religious books on August 7, 2001, wherein he challenged the policy allowing him one religious book at a time and stated that his religion requires him to read several religious books. *Id.*, Exhibit C-2. On December 15, 2003, Plaintiff filed an

inmate grievance challenging the policy allowing him only three personal books at a time, wherein he requested twelve personal books or as many as would fit in his foot locker. *Id.*, Exhibit B-2. On December 8 2003, Plaintiff filed inmate grievances challenging the denial of his request to purchase "Ebony" and "Jet" magazines and the Albuquerque Journal. *Id.*, Exhibits D-2 and E-2, respectively. On the same date, Plaintiff filed an inmate grievance challenging the denial of his request to have as many letters as fit in his storage locker. *Id.*, Exhibit H-2. Plaintiff stated at the January 27, 2010 evidentiary hearing that he wanted all of his legal work, legal books, and legal periodicals. *Transcript (Doc. 318)* at 12.[5]

On April 30, 2001, NMCD issued CD-143000 which is Defendants' policy for Prison Security Levels V and VI and applies to Plaintiff's claim regarding religious books. *See Submission of Documents Per Order of Court [Doc 307]*, Exhibit A-1 *(Doc. 311-3)* at 2.[6] This policy was revised on July 7, 2003, and this revised version applies to Plaintiff's claims regarding personal books, magazines, newspapers, and letters. *Id.*, Exhibit A *(Doc. 311-2)* at 2. At all times relevant to Plaintiff's First Amendment claims, Plaintiff was incarcerated in the NMCD Prison Security Levels V and/or VI and, thus, was subject to NMCD Policy CD-143000. *See Defendants' Supplemental Brief (Doc. 316)* at 2-3 and *Complaint (Doc. 1)* at Exhibits B-2 and H-2 (referring to Plaintiff's placement in NMCD's classification system). Levels V and VI are "[t]he most restrictive custody classifications for inmates posing the greatest risk to institutional security and the safety of others." *Submission of Documents Per Order of Court [Doc 307]*, Exhibit A-1

_____

[5]The Court is unable to find any grievance relating to Plaintiff's claim regarding his legal books; however, since failure to exhaust administrative remedies is an affirmative defense that has not been raised by Defendants in their answers to Plaintiff's *Amended Complaint (Doc. 253)* (*see Docs. 256, 260,* and *288*) or in their dispositive motions filed since the *Jones* and *Roberts* cases were decided, the Court will consider the claim. *See Jones v. Bock*, 549 U.S. 199, 216-17 (2007); *Roberts v. Barreras*, 484 F.3d 1236, 1240-41 (10th Cir. 2007).

[6]All citations are to the Court's CM-ECF page numbers unless otherwise indicated.

*(Doc. 311-3)* at 4; *see also* Exhibit A *(Doc. 311-2)* at 4.   NMCD Policy CD-143000 is a
"behavior-driven progressive incentive system consisting of steps that encourages appropriate
behavior."  *Id.*, Exhibit A-1 *(Doc. 311-3)* at 3 and Exhibit A *(Doc. 311-2)* at 4.   Management of
inmates placed in NMCD's step system is behavioral- and incentive-based, whereby inmates are
allowed more privileges based on their behavior. ***Defendants' Supplemental Brief*** *(Doc. 316)* at 3
and ***Transcript*** *(Doc. 318)* at 27-28.

The Court finds that, based on the undisputed facts now before the Court and as a matter of
law, Plaintiff's First Amendment rights have not been violated by NMCD Policy CD-143000.  First,
the Court finds that there is a valid, rational connection between the NMCD policy of limiting
inmates' possession of reading materials and the governmental interest of giving inmates an
incentive to improve their behavior in order to move to a less-restrictive level of categorization in
the prison.  Under the 2003 Table of Services, inmates were allowed increasing numbers of personal
reading materials and letters as they moved up in the NMCD classification system based on good
behavior.  *See **Submission of Documents Per Order of Court [Doc 307]**,* Exhibit A *(Doc. 311-2)*
at 60, 62 and ***Transcript*** *(Doc. 318)* at 24-25.  In addition, inmates who demonstrate good behavior
can be reclassified into a lower custody level.  ***Submission of Documents Per Order of Court***
***[Doc 307]***, Exhibit A *(Doc. 311-2)* at 24-28 and Exhibit A-1 *(Doc. 311-3)* at 17-21.  Defendants,
therefore, have met their burden of demonstrating that NMCD Policy CD-143000 is reasonably
related to legitimate penological interests.  *See Beard*, 548 U.S. at 531-32 (holding that the
"connections between newspapers and magazines, the deprivation of virtually the last privilege left
to an inmate, and a significant incentive to improve behavior, are logical ones").

Second, the Court finds that Plaintiff had alternative means to obtain his requested reading
materials.  Even though the 2001 Table of Services in CD-143000 allowed inmates at Levels V

and VI only one religious book at a time (*see Submission of Documents Per Order of Court [Doc 307]*, Exhibit A-1 *(Doc. 311-3)* at 42, Plaintiff testified that religious books could be part of the three personal books inmates were allowed.  *See Transcript (Doc. 318)* at 111.  Plaintiff, therefore, had access to more than one religious book at a time, as he requested.  Plaintiff also had access to the Bible and magazines and newspapers in the library (*id.* at 16-19), and was allowed up to three footlockers of legal books (*id.* at 23-24).  Plaintiff testified that the prison's policy allows up to three footlockers of legal work, including the Prison Legal News, but he was unaware of that policy when he was writing his grievances.  *Id.* at 23.  Plaintiff stated that he is now using that policy.  *Id.* at 24.  This demonstrates that Plaintiff had alternative means to obtaining his legal materials.  Even though Plaintiff may not have been able to obtain the specific magazines and newspapers he requested, and may not have had an alternative means to possess more than three letters at a time or all the legal materials he wanted, "[t]he absence of any alternative . . . is not conclusive of the reasonableness of [the prison's p]olicy."  *Beard*, 548 U.S. at 532 (citation and quotation marks omitted).

Third, the Court finds that accommodation of Plaintiff's requests for additional books, magazines, newspapers and letters could have a significant negative impact on guards, inmates and prison resources because it could hinder the ability of the prison to use these materials as incentives to encourage good behavior by inmates.  And finally, Plaintiff has not suggested any "ready alternatives" to the property restrictions that would accommodate his constitutional rights.

Based on the Court's consideration of the *Turner v. Safley* factors, the Court finds that NMCD Policy CD-143000, which limits inmates access to books, magazines, newspapers and letters, is not only rationally related to a legitimate penological interest, but also provides alternative means for accommodating inmates' interests in access to these materials through the library.

13

Therefore, Plaintiff has not shown that his First Amendment rights were violated by that policy. Accordingly, the Court recommends granting summary judgment for Defendants and denying summary judgment for Plaintiff on this claim.

### *Eighth Amendment Claim*

Next, Plaintiff asks the Court to enter summary judgment in his favor on his claim that he was denied recreation for 120 consecutive days in violation of his right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution. *See **Motion for Partial Summary Judgment** (Doc. 296)* and ***Plaintiff's Amended Memorandum of Law** (Doc. 302)* at 2-3, 4-5, 18-20. The undisputed facts regarding this claim are that on January 18, 2001, NMCD's hearing officer entered two Disciplinary Decisions recommending that Plaintiff lose recreation privileges for sixty days for each decision based on Plaintiff's refusal to turn off his light upon the direction of corrections officers. *See **Notice and Motion for Leave to File Amended and Supplemental Complaint** at Exhibits PD-4, and PD-7 (Disciplinary Decisions) and Exhibits PD-5 and PD-8 (Inmate Misconduct Reports) (Doc. 174-2)*. As a result of the January 18, 2001 Disciplinary Decisions, Plaintiff was not able to go outside or to the recreation cage at all for 120 consecutive days. ***Transcript** (Doc. 318)* at 37-39. During the 120 days, Plaintiff was only allowed outside his cell to go to the shower for ten minutes a day. *Id.* at 39. Plaintiff tried to exercise in his cell during the 120 days, but "the ventilation was so bad that [he] couldn't breathe." *Id.* On July 14, 2003, NMCD revised Policy CD-090101 regarding loss of privileges to state that: "Recreation can only be forfeited in increments of two days per week, not to exceed two days per week," whereas the previous policy in effect in 2002 was silent as to limitations on the amount of recreation that could be forfeited per week and simply stated: "Loss may include . . . gymnasium, yard . . . ." *Compare **Martinez Report and Motion for Summary Judgment** (Doc. 101)*

at Exhibit D 01461 (policy as of July 14, 2003) and *Document 101* at Exhibit D 01428 (policy as of July 15, 2002)).

Defendants argue in ***Defendants' Supplemental Brief*** *(Doc. 316)* at 12 and 18 that this claim is moot because Plaintiff filed suit on this same allegation in a state court case which resulted in a settlement agreement.   Defendants ask the Court to take judicial notice of a copy of the settlement agreement which is attached to ***Defendants' Memorandum Brief in Support of Summary Judgment or Dismissal*** *(Doc. 39)* as Exhibit 1.   Defendants fail to mention that the Court already denied this argument in its second ***PF&RD*** *(Doc. 242)*, which was adopted by the Honorable Martha Vázquez, Chief United States District Judge *(Doc. 244)*.   There, the Court explained that Defendants failed to demonstrate how this settlement agreement rendered Plaintiff's claims moot. ***PF&RD*** *(Doc. 242)* at 15.   Defendants offer no new information regarding the settlement agreement, other than to state that it settled Plaintiff's claims related to loss of recreation in a state case. ***Defendants' Supplemental Brief*** *(Doc. 316)* at 18.   The settlement agreement does not contain any reference to limitations on denial of recreation, nor does it state that parties to the settlement agreement are precluded from raising any claims other than those in their state cases. *See* ***Defendants' Memorandum Brief in Support of Summary Judgment or Dismissal*** *(Doc. 39)* at Exhibit 1.   Furthermore, by the terms of the agreement, Plaintiff agreed to only dismiss with prejudice his claim of a "violation of ex post facto [law]" and dismiss without prejudice his claim for denial of access to the courts, neither of which are at issue here. *Id.*, Exhibit 1 at 23.   The Court finds no support for Defendants' argument that Plaintiff's Eighth Amendment claim is moot based on this settlement agreement.

Defendants next contend that Plaintiff's claim fails because NMCD Policy CD-143002(II)(G)(2)(e) (***Submission of Documents Per Order of Court [Doc 307]***, Exhibit A-1

*(Doc. 311-3)* at 39) states that temporary suspension of the recreation program privilege can be suspended for two days of recreation during the week of the incident.  ***Defendants' Supplemental Brief*** *(Doc. 316)* at 20.  Defendants attach an affidavit by Ralph Casaus stating that "a suspension of privileges, which included the suspension of recreation, even if it were for a total of consecutive days, would be applied per [NMCD Policy CD-143002(II)(G)(2)(e)] to be a suspension of two of the five days the inmate was entitled to recreate per week."  *Id.* at Exhibit B page 34.  Mr. Casaus goes on to state that "[t]herefore, if Plaintiff had his recreation privileges suspended for 120 days, he would have lost two days of recreation per week per the 120-day period [and] Plaintiff would not have lost a total of 120 consecutive days to recreate."  *Id.*  The Court finds that this argument fails to establish a disputed material fact for several reasons.

First, Mr. Casaus' affidavit cannot be used to refute Plaintiff's sworn testimony that he was denied all recreation for 120 consecutive days because Mr. Casaus' statements are not made with personal knowledge of how long Plaintiff was actually denied recreation.  *See* Fed. R. Civ. P. 56(e)(1) (affidavits must be made on personal knowledge) and *Tavery v. United States*, 32 F.3d 1423, 1427 (10th Cir. 1994) (holding that only statements made with actual personal knowledge will support a motion for summary judgment and a court must disregard statements of mere belief); *see also Hayes v. Marriott*, 70 F.3d 1144, 1148 (10th Cir. 1995) (holding that summary judgment should not be granted absent affidavits based on personal knowledge regarding prisoner's claims).  Here, Mr. Casaus' statements amount to no more than what "should have" happened had the policy been followed, and says nothing about what "actually" happened.  Moreover, Mr. Casaus' statement contains no information regarding whether the policy he is referring to was in effect at the time Plaintiff's recreation was suspended.  Thus, Plaintiff's sworn testimony is undisputed that he lost 120 consecutive days of recreation.  Second, NMCD Policy CD-143002(II)(G)(2)(e) pertains

16

to "Temporary Suspension of Privileges for Step System Inmates (CD-1430002.4)" pursuant to a "Memorandum Report," which is a "behavior management tool" that "is separate from the Inmate Discipline Code of Conduct." *Submission of Documents Per Order of Court [Doc 307]*, Exhibit A-1 *(Doc. 311-3)* at 38-39.  Plaintiff, however, lost his recreation privileges based on two "Disciplinary Decisions," not "Memorandum Reports," which fall under the NMCD "Inmate Discipline" policy (*see Martinez Report and Motion for Summary Judgment (Doc. 101)* at Exhibit D 01425-D 01428 (NMCD Policy CD-090101 "Inmate Discipline")), and which, in 2001, contained no such limitation on loss of recreation for disciplinary purposes (*id.* at D 01428 (general guidelines for loss of privileges with no limitations as to loss of gymnasium or yard, *i.e.*, recreation).

Because Defendants have failed to present any competent evidence that refutes Plaintiff's sworn testimony that he was denied access to any recreation or exercise for 120 consecutive days, despite being given numerous opportunities to do so, the Court finds that the undisputed facts provide that Plaintiff was denied recreation for 120 consecutive days.  To prevail on his Eighth Amendment claim, Plaintiff must show that: (1) his deprivation of exercise for 120 consecutive days was objectively sufficiently serious, and (2) that Defendants were deliberately indifferent to Plaintiff's denial of "the minimal civilized measure of life's necessities." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008).  The Court finds that the total denial of exercise for 120 consecutive days is sufficiently serious because it constitutes a violation of Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment.. *See Housley v. Dodson*, 41 F.3d 597, 599 (10th Cir. 1994), *overruled on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996) (holding that "total denial of exercise for an extended period of time would constitute cruel and unusual punishment prohibited by the Eighth Amendment," and holding that allegations that inmate was given only 30 minutes of out-of-cell exercise in 3 months states a claim

for an Eighth Amendment violation) (citation omitted); *see also Bailey v. Shillinger*, 828 F.2d 651, 53 (10th Cir. 1987) (explaining that "some form of regular outdoor exercise is extremely important to the psychological and physical well being of inmates," and holding that even a convicted murderer who had murdered another inmate and was considered a high security risk and was in segregation was entitled to at least one hour per week of outdoor exercise under the Eighth Amendment); *Delaney v. DeTella*, 256 F.3d 679, 683-85 (7th Cir. 2001) (holding that a 6-month denial of "any meaningful chance to exercise," without any evidence of the plaintiff's serious misconduct or threat of escape, constitutes an Eighth Amendment violation and recognizing "the strong likelihood of psychological injury when segregated prisoners are denied all access to exercise for more than 90 days.") (citation omitted).  Plaintiff's testimony that he tried to exercise in his cell during the 120 days, but "the ventilation was so bad that [he] couldn't breathe," demonstrates that he was not given any meaningful chance to exercise for an extended period of time.  ***Transcript (Doc. 318)*** at 39.

The Court further finds that Defendants were deliberately indifferent to Plaintiff's Eighth Amendment right to some sort of exercise because the *Housley* holding had been in effect for seven years by the time Plaintiff was denied recreation for 120 days.  Furthermore, it appears that NMCD was aware of the need to limit denial of recreation based on NMCD Policy CD-143002(II)(G)(2)(e) which limited suspension of recreation for two of the five days the inmate was entitled to recreate per week based on "Memorandum Report"-disciplinary decisions.  Since the law was clearly established at the time that Plaintiff was subjected to what amounts to cruel and unusual punishment, Defendants are not entitled to qualified immunity on this issue.  For these reasons, the Court finds that Plaintiff's Eighth Amendment rights were violated as a matter of law.

### *State-Created Liberty Interest Due Process Claim*

Plaintiff's final remaining claim is that his visits with his wife were suspended for a total of four years and six months without giving him notice of the suspension or a time limit on how long the suspension would last, which was a violation of his state-created liberty interest in spousal visitation rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See **Amended Civil Complaint** (Doc. 253)* at 21-25.  In order to show that suspension of spousal visitation constitutes a deprivation of a constitutionally protected state-created liberty interest, Plaintiff must first show that his visitation with his spouse was indefinitely suspended. *See Cordova v. LeMaster*, 2004-NMSC-026, ¶¶ 24, 136 N.M. 217, 96 P.2d 778, 785 (holding that the <u>indefinite</u> suspension of spousal visitation is an atypical and significant hardship and, therefore, constitutes a state-created liberty interest).  If Plaintiff can make such a showing, in order to establish that the deprivation of the state-created liberty interest was in violation of the procedural safeguards of the Due Process Claus of the Fourteenth Amendment, Plaintiff must demonstrate that he was deprived of spousal visitation without adequate due process, which would include: notice of the charge resulting in the suspension of visits; an opportunity to be heard on the charges, to present evidence and to rebut the evidence; and a written statement by an impartial factfinder as to the evidence relied on and the reasons for the disciplinary action, including the length of time chosen for the discipline. *Id.* at ¶ 28, 96 P.d at 785-86.

In approximately April of 2000 (***Transcript** (Doc. 318)* at 55), Plaintiff's wife's visitation privileges were suspended because she attempted to mail Plaintiff a cell phone in violation of NMCD policies (***Amended Complaint** (Doc. 253)* at 22 and ***Transcript** (Doc. 318)* at 47-52). Shortly thereafter, Plaintiff's wife requested reinstatement of her visiting privileges with Plaintiff and was told in October of 2000 that her visitation privileges would not be returned at that time, but

she could submit a new request in six months "to the institutional warden where [Plaintiff] is housed." *See **Notice and Motion for Leave to File Amended and Supplemental Complaint** (Doc. 174-2)* at Exhibit SV-1.  On July 10, 2001, Plaintiff's wife was told that she would have to fill out the proper application if she would like her visitation privileges reinstated. *Id.* at Exhibit SV-3; *see also **Defendants' Supplemental Brief*** at Exhibit C, page 43 *(Doc. 316)* (NMCD Policy CD-100201(F) stating that "[a]ny visitor who has received a suspension or permanent termination from visiting may appeal his/her suspension or permanent termination in writing to the Director of Adult Prisons," and that "[a]ny such appeal may be renewed <u>annually</u>") (emphasis added).  Plaintiff has no evidence that his wife ever filled out any applications for reinstatement of her visitation privileges. ***Transcript** (Doc. 318)* at 68-69.  Based on these undisputed facts, the Court finds that there is insufficient evidence that Plaintiff's wife's visitation privileges were suspended indefinitely.  At most, they were suspended for a year and she then was required to submit the proper application to have the privilege reinstated, but there is no evidence that she did so.  Moreover, even if Plaintiff's wife's visits were suspended indefinitely, Plaintiff testified that he had the opportunity to grieve the decision to suspend her visits but he chose not to. ***Transcript** (Doc. 318)* at 60 (stating that he did not grieve the decision to suspend his wife's visits because he "felt like maybe they had a right to do it").  Furthermore, Plaintiff had notice of the suspension shortly after the visits were suspended, but chose not to grieve it. *Id. (Doc. 318)* at 69.

> THE COURT:        Well, you -- she [Plaintiff's wife] didn't come for the visit, and you learned shortly thereafter that her visit had been suspended?
>
> MR. McGHEE:       Right.
>
> THE COURT:        Okay.  But you didn't grieve it at that time?
>
> MR. McGHEE:       Right.

20

THE COURT:          -- [You] figured that was fair --

MR. McGHEE:          Right.

The Court, therefore, finds that Plaintiff has failed to demonstrate deprivation of a constitutionally protected state-created liberty interest under the Due Process Claus of the Fourteenth Amendment. The Court recommends granting summary judgment for Defendants and denying summary judgment for Plaintiff on this claim.

### *Damages*

The Court will now consider what damages Plaintiff is entitled to for violation of his Eighth Amendment claim. Plaintiff asks for $3600.00 in compensatory damages for his Eighth Amendment claim (*see **Plaintiff's Memorandum of Law in Support of his Motion for Summary Judgment** (Doc. 298)* at 14) and for punitive damages and costs (*id.* at 15-16). Plaintiff does not claim that he has suffered any measurable money damages: therefore, he is entitled to nominal damages only. *See Searles v. Van Bebber,* 251 F.3d 869, 879 (10th Cir. 2001), *cert. denied*, 536 U.S. 904 (2002). The Court recommends awarding Plaintiff a total of $100.00 in nominal damages as compensation for violation of his Eighth Amendment rights. In addition, the Court recommends awarding Plaintiff $1.60 as reimbursement for his filing fee. *See **Order Granting Leave to Proceed Pursuant to 28 U.S.C. § 1915(b) and to Cure Defects** (Doc. 9)*. Under § 1983, "[p]unitive damages are available only for conduct which is 'shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Id.* (citations omitted). The Court finds no evidence of the type of conduct or culpable state of mind that would entitle Plaintiff to punitive damages.

## RECOMMENDED DISPOSITION

Based on the foregoing, the Court recommends that ***Defendants' Motion for Summary Judgment (Doc. 295)*** be **GRANTED in part** and **DENIED in part** and that Plaintiff's ***Motion for Partial Summary Judgment (Doc. 296)*** be **GRANTED in part** and **DENIED in part**.  The Court recommends that judgment be entered in favor of Plaintiff and against Defendants Perry, Williams and Bustos for Plaintiff's Eighth Amendment claim.  The Court further recommends that Plaintiff be compensated **$100.00** in nominal damages for violation of his Eighth Amendment rights and **$1.60** as reimbursement for his filing fee.  Finally, the Court recommends that this case be dismissed with prejudice.

*Lourdes A. Martínez*
_____
**HONORABLE LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**